# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

ERIC RUGGLES

|  |  |  |
|---|---|---|
| Petitioner, | : | Case No. 1:23-cv-477 |
| - vs - | | District Judge Douglas R. Cole |
| | | Magistrate Judge Michael R. Merz |
| WARDEN, London Correctional Institution, | | |
| Respondent. | : | |

# REPORT AND RECOMMENDATIONS

This is an action under 28 U.S.C. § 2254 in which Petitioner Eric Ruggles, represented by Attorney Stephenie N. Lape[1], seeks habeas corpus relief from his convictions in the Warren County Court of Common Pleas on three counts of gross sexual imposition in violation of Ohio Revised Code § 2907.05(A)(4); three counts of rape in violation of Ohio Revised Code § 2907.02(A)(1)(b); and two counts of sexual battery in violation of Ohio Revised Code § R.C. 2907.03(A)(5) in Case Number 17CR33134 and on one count of gross sexual imposition in violation of Ohio Revised Code § 2907.05(A)(4) in Case Number 18CR35021 (Petition, ECF No. 1).

With the filing of Petitioner's Amended Traverse (ECF No. 11), the case became ripe for decision. The Magistrate Judge reference in this case was recently transferred to the undersigned

---

[1] Counsel is referred to on the docket as Stephenie Lape Wolfinbarger, but has signed filings as "Stephenie Lape." By using the latter name, the Magistrate Judge is intending to honor counsel's own usage.

to help balance the Magistrate Judge workload in the District and expedite consideration of this and other pending habeas corpus cases (ECF No. 12).

**Litigation History**

On June 19, 2017, the Warren County grand jury indicted Petitioner on seventeen counts of sexual offenses with his older biological daughter Susan as the victim from 2003 to 2012, when she was four to 12 years old. (Indictment, State Court Record, ECF No. 4, Ex. 1, PageID 37). In December 2018, the grand jury indicted him on two more counts of gross sexual imposition with his younger biological daughter Ashley as the victim from 2010 to 2012 when she was eight to ten years old. *Id.*, Ex. 11. On the State's Motion, and without opposition by Petitioner, these cases were consolidated for trial. *Id.* at Exs. 15, 16.

After trial, the jury convicted Ruggles of three counts of rape, five counts of gross sexual imposition, and two counts of sexual battery of Susan. (Verdict Entry, State Court Record, ECF No. 4, Ex. 17, PageID 87). In Ashley's case, the jury convicted Ruggles of one count of gross sexual imposition. *Id.* at Ex. 19. The trial court then sentenced Petitioner to an aggregate term of imprisonment of twenty years to life (Sentencing Entry, State Court Record, ECF No. 4, Ex. 20, PageID 96).

Represented by new counsel, Petitioner appealed to the Ohio Twelfth District Court of Appeals which affirmed the conviction. *State v. Ruggles*, 2020-Ohio-2886, 154 N.E.3d 151 (2020)("*Ruggles I*"). The Supreme Court of Ohio declined jurisdiction over a further appeal. *State v. Ruggles*, 160 Ohio St.3d 1447 (2020).

On August 10, 2020, Ruggles, represented by new counsel, moved under Ohio R. App. P. 26(B) to reopen the appeal, pleading three claims of ineffective assistance of appellate counsel for

failure to plead three claims of ineffective assistance of trial counsel (Application, State Court Record ECF No. 4, Ex. 43, PageID 321). The Twelfth District decided the 26(B)Application on the merits by finding there was no merit to the unraised claims of ineffective assistance of trial counsel. *State v. Ruggles*, Case No. CA2019-05-038 (Entry, State Court Record, ECF No. 4, Ex. 45, PageID 346). Petitioner did not appeal to the Ohio Supreme Court.

On October 20, 2020, Ruggles filed a petition for post-conviction relief under Ohio Revised Code § 2953.21. He was represented by different counsel from the attorney who filed the Ohio App. R. 26(B) Application. The trial court dismissed the petition (Decision and Entry, State Court Record, ECF No. 4, Ex. 48, PageID 503). Ruggles appealed to the Twelfth District Court of Appeals, represented by the same attorney who represents him in these habeas corpus proceedings. The Twelfth District affirmed. *State v. Ruggles,* 2022-Ohio-1804 (Ohio App. 12th Dist. May 31, 2022)(*Ruggles II*). Ruggles appealed, but the Ohio Supreme Court again declined jurisdiction. *State v. Ruggles,* 167 Ohio St. 1527 (2022).

On July 27, 2023, Ruggles filed his Petition for Writ of Habeas Corpus in this Court, pleading the following grounds for relief:

> **Ground One**: The state courts violated Mr. Ruggles' constitutional right to the presumption of innocence, with no duty to present evidence.
>
> **Supporting Facts**: The trial court advised the jury as follows: it is difficult for the accused to "prove a negative," "there are two sides to everything;" "if you were the accused, you'd want your chance;" "the question is how is that addressed? You know, how are the two sides presented." The trial court advised the jury to wait until they have heard Mr. Ruggles' side of the story.
>
> **Ground Two**: The State committed prosecutorial misconduct during voir dire, violating Mr. Ruggles' constitutional right to a fair trial, as guaranteed by the Due Process Clause.
>
> **Supporting Facts:** During voir dire, the State gave expert opinions about the typical sexual abuser and questioned the jury about "the

3

one witness" rule shifting the burden to the defendant. The State told the jury the typical sexual abuser was a family member or someone close to the family and further attempted to define PTSD related to sexual abuse. In addition, the State misstated the burden of proof, rather than explaining the State's burden as "beyond a reasonable doubt," the State explained to the jury that the evidence of one witness, if believed was enough to convict.

**Ground Three**: The decision of the State Court denying Mr. Ruggles' motion for order to produce the Clark County Domestic Relations Court's 2012 In-Camera Interviews of S.D. and A.D. denied Mr. Ruggles his Sixth Amendment right to confront witnesses against him and his Fourteenth Amendment right to due process of the law.

**Supporting Facts:** Mr. Ruggles motioned the trial court for an order to release In-Camera interviews of A.D. and S.D. which were performed by the Clark County Domestic Relations in 2012. Mr. Ruggles argued the interviews contained potentially exculpatory evidence as the interviews contained testimony of S.D. and A.D. related to the date range contained in the indictments against Mr. Ruggles. The Indictments alleged conduct occurring between July 2003 and September of 2012, and the interviews were held in 2012. The allegations in the Indictment did not arise for several years after the 2012 interviews.

**Ground Four**: The State Courts below violated Mr. Ruggles' Sixth Amendment right to testify.

**Supporting Facts:** Mr. Ruggles did not testify at trial. During his sentencing, Mr. Ruggles clearly stated his desire to testify at trial. The trial court did not hold a hearing to inquire rather [sic] Mr. Ruggles sixth amendment right to testify had been violated.

**Ground Five**: Mr. Ruggles' convictions were based on legally insufficient evidence and against the manifest weight of the evidence, Mr. Ruggles was denied due process of the law, as guaranteed by the Fourteenth Amendment to the Constitution of the United States.

**Supporting Facts:** No physical evidence was presented in this case despite allegations of vaginal penetration. The alleged victims, A.D. and S.D. provided inconsistent testimony in their interviews and testimony at trial. A.D. and S.D.'s testimony contradicted each other's testimony. Janel Ruggles, Mr. Ruggles' wife, testified at trial contradicting portions of S.D. and A.D.'s testimony, making some

4

of their testimony wholly untrue or impossible. In 2012, Mr. Ruggles' parenting time with A.D. and S.D. stopped, and during the course of the proceedings in domestic relations court, there were not any allegations of sexual abuse. The alleged victims were interviewed in-camera by the court and represented by a guardian ad litem during the domestic relations proceedings and no allegations of sexual abuse were made. The alleged victims were in counseling and never disclosed sexual abuse. S.D. and A.D. were interviewed by a professional social worker in 2016 and A.D. did not disclose any sexual abuse while S.D. disclosed some sexual abuse. At this time, they had not seen Mr. Ruggles for four years and had no reason to fear him. Both alleged victims were interviewed again by the same social worker on later dates and gave different stories and more information; their stories became bigger and more fantastical. The testimony of S.D. and A.D. at trial was contradictory to their interview statements. The alleged victims admit repeatedly to not telling the truth, several of their statements were proven not true at trial.

**Ground Six**: Mr. Ruggles was denied his right to effective assistance of counsel, as guaranteed by the Sixth Amendment to the United States Constitution and the Constitution of the State of Ohio for the following errors of trial counsel each alone and cumulatively:

i)      Trial counsel was ineffective when he failed to object to lay witness testimony that the alleged victims suffered psychological injuries as a result of Mr. Ruggles' conduct.

ii)     Trial counsel was ineffective when he failed to object to the State's evidence of prior bad acts that were irrelevant to the charges against Mr. Ruggles.

iii)    Trial counsel was ineffective when he failed to object to Jennifer Knisley's testimony improperly vouching for the credibility of the alleged victims.

iv)     Trial counsel was ineffective when he failed to object to the State's motion to join the two cases and further failed to object to the court's consolidation the two cases.

v)      Trial counsel was ineffective when he failed to subpoena or call as a witness Dr. Lori Vavul Roediger, a witness on the State's witness list which defense counsel promised the jury, during his opening statement, would testify at trial.

vi) Trial counsel was ineffective when he failed to object to the State's witness Jennifer Knisley, being certified as an expert witness.

vii) Trial counsel was ineffective when he failed to interview, investigate, or subpoena a medical expert.

viii) Trial counsel was ineffective when he failed to interview, investigate, or subpoena a psychological expert.

ix) Trial counsel was ineffective when he failed to obtain counseling or medical records for use in impeaching the alleged victims.

x) Trial counsel was ineffective when he failed to present available impeachment evidence or provide a motive/bias.

xi) Trial counsel was ineffective when he failed to investigate, interview, or subpoena other impeachment witnesses.

xii) Trial counsel's cumulative errors prejudiced Mr. Ruggles.

**Supporting Facts:** i) At trial, trial counsel allowed, without objection, both of the alleged victims to testify at length identifying their medical and psychological conditions and further, concluding that these conditions were caused by Mr. Ruggles.

ii) Both alleged victims testified, at length, about what they called UTI checks. Both alleged victims testified at length about several alleged incidents of mental, emotional, and spiritual abuse. S.D. also testified about an incident during which she claimed Mr. Ruggles killed a pet dog and a pet cat. A.D. testified that Mr. Ruggles threatened to lock her in the basement if she did not do what she was told. A.D. further testified about being required to exercise and wear a device on her stomach that would help her lose weight because she alleged that Mr. Ruggles thought she was overweight.

iii) At trial, trial counsel allowed, without objection, testimony from Jennifer Knisley vouching for the credibility and truthfulness of the alleged victims.

iv) The State filed a motion for joinder of two case numbers – 17CR33134 involving allegations made by A.D. and 18CR35021 involving allegations made by S.D. In support of its motion, the State alleged that the two cases arose out of a single course of conduct, that the charges were similar conduct occurring in the same

location and from related circumstances. While these two cases were actually two separate transactions connected only by location and similar circumstances. There were not any allegations in either indictment that any of the alleged acts of sexual abuse to the two separate victims occurred at the same time or with both alleged victims at the same time. Trial counsel failed to file a response to the joinder or object to the joinder or consolidation.

v) During his opening statement, defense counsel promised to the jury that a key witness, the States's medical expert, Lori Vavul Roediger would testify at trial and provide exculpatory evidence. The State did not call this witness. Although under subpoena by the State, defense counsel did not call this witness or subpoena this witness to appear and testify.

vi) At trial Jennifer Knisley, a CAREHOUSE social worker was certified as an expert witness and provided testimony without having met the threshold requirements under the Rules of Evidence to allow such testimony. Trial counsel did not object to this testimony.

vii) As discussed in Ground Six (v) above, trial counsel promised to create doubt with the testimony of Dr. Lori Vavul Roediger and then failed to ever call her as a witness. In addition, in his Petition for Post Conviction relief, Mr. Ruggles presented affidavits, emails, and the report of a separate potential medical expert that could have been used as impeachment evidence. Mr. Ruggles' affidavits and emails showed that the hiring of an expert witness was not only requested by Mr. Ruggles, but Mr. Ruggles paid a fee to retain expert witnesses.

viii) In addition, in his Petition for Post Conviction relief, Mr. Ruggles presented affidavits, emails, and the report of a potential psychological expert that could have been used as impeachment evidence. Mr. Ruggles' affidavits and emails showed that the hiring of an expert witness was not only requested by Mr. Ruggles, but Mr. Ruggles paid a fee to retain expert witnesses.

ix) Trial counsel failed to request or attempt to obtain the follow records which were available and would have contained impeachment evidence, at a minimum showing the many times that S.D. and A.D. were in a safe environment and could have reported the allegations but did not: 2012 counseling records of S.D. and A.D; 2006-2012 Children's Hospital records; 2017-2019 counseling records of S.D. and A.D. (both alleged victims stated that it was counseling during this time that helped them have the courage to

disclose); July 2012 records from a visit to the Family Advocacy Center.

x) Trial counsel also failed to present several available items of impeachment evidence. Trial counsel did not question S.D. about prior false allegations against a man named Chad Frank nor interview or subpoena Chad Frank as requested by Mr. Ruggles. Trial counsel did not use available evidence or witnesses to address the stepparent adoption of both A.D. and S.D. by their stepfather which would have provided evidence of motive or bias. Trial counsel did not introduce or cross examine S.D. on the contents of a 2012 Guardian ad Litem report which was available to trial counsel at the time of trial. Trial counsel did not interview or subpoena Mr. Ruggles parents Gwendolyn and Robert Ruggles to testify about when and where Mr. Ruggles lived during the time period contained in the allegations including, but not limited to, the time period that Mr. Ruggles lived with his parents and the details of the where his parents lived at that time.

xi) By email, Mr. Ruggles provided trial counsel with a list of eighteen potential witnesses. Trial counsel failed to contact, interview, or prepare sixteen of those witnesses. Trial counsel only called one of the requested witnesses to testify, Janel Ruggles, Mr. Ruggles' wife, but never interviewed her or prepared her to testify. Had Janel Ruggles been interviewed and prepared, trial counsel would have been able to elicit additional impeachment evidence from Janel. Many of the requested witnesses would have been able to provide impeachment evidence, as evidenced by affidavits contained in Mr. Ruggles' Petition for Post Conviction Relief, but the witnesses were never contacted by trial counsel or subpoenaed to appear in court despite trial counsel representing that he had contacted the witnesses.

xii) All of the facts above in Ground Six (i)-(xi) supported the cumulative effect of trial counsel's errors at trial.

Petition, ECF No. 1.

# Analysis

### Ground One:  Violation of the Presumption of Evidence

In his First Ground for Relief,  Petitioner asserts the trial court violated his right to a presumption of innocence by certain instructions it gave to the jury, particularly that "it is difficult for the accused to 'prove a negative,' 'there are two sides to everything;' 'if you were the accused, you'd want your chance;' 'the question is how is that addressed? You know, how are the two sides presented.' The trial court advised the jury to wait until they have heard Mr. Ruggles' side of the story."

Respondent asserts this claim is procedurally defaulted by counsel's failure to make a contemporaneous objection (Return, ECF No. 5, PageID 1320).  Ruggles raised this claim as his first assignment of error on direct appeal and the Twelfth District decided it as follows:

> ¶ 34} Assignment of Error No. 1:
>
> ¶ 35} THE TRIAL COURT VIOLATED MR RUGGLES' CONSTITUTIONAL RIGHT TO THE PRESUMPTION OF INNOCENCE, WITH NO DUTY TO PRESENT EVIDENCE.
>
> ¶ 36} In his first assignment of error, appellant argues that the trial court erred by making improper statements during jury selection, thereby depriving him of a fair trial.  Specifically, appellant points to several of the judge's statements to the venire such as "if a person's accused of something, they really can't prove-they can't deliver proof that something did not happen, proving a negative" and "there's two sides to everything" to demonstrate that the trial court compromised appellant's right to a fair trial because it infringed on his presumption of innocence and right to remain silent.
>
> ¶ 37} Appellant did not object to the trial court's statements, therefore, he has waived all but plain error review. *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, ¶ 201. An appellate court will take notice of plain error with "utmost caution, under exceptional

9

circumstances, and only to prevent a manifest miscarriage of justice." *State v. Baldev*, 12th Dist. Butler No. CA2004-05-106, 2005-Ohio-2369, ¶ 12. To constitute plain error there must be an obvious deviation from a legal rule that affected appellant's substantial rights, that is, the error must have affected the outcome of the trial. State v. Barnes, 94 Ohio St. 3d 21, 27 (2002).

¶ 38} Pursuant to Crim.R. 30(8),

> at the commencement and during the course of the trial, the court may give the jury cautionary and other instructions of law relating to trial procedure, credibility and weight of the evidence, and the duty and function of the jury and may acquaint the jury generally with the nature of the case.

In determining whether the trial court erred giving instructions during jury selection voir dire, the reviewing court must look at the entirety of the instructions and consider the instructions in their full context. *State v. Brown,* 12th Dist. Butler No. CA2011-11-207, 2013-Ohio-1610, ¶ 43. The Ohio Supreme Court has explained that a trial court's "shorthand references to legal concepts" during voir dire cannot be equated to the final instructions given before final deliberation. See *State v. Stallings*, 89 Ohio St.3d 280, 285 (2000) (finding no plain error with the trial court's imprecise explanation of death penalty aggravating and mitigating factors at voir dire).

¶ 39} Here, the trial court instructed the venire on the requisite burden of proof for a criminal trial, i.e. proof beyond a reasonable doubt, and that it was the prosecution that bore that burden of proof at trial. Next, the trial court cautioned the venire not to consider appellant's decision to remain silent. Specifically, the trial court stated

> And if the defense elects not to have the defendant testify, you cannot consider that for any purpose. Now, that goes against your normal rules of life. Usually, when you're asked to really make a determination, you want all the facts. There's a natural human tendency to say, well, I want this explanation. I want to hear an explanation of what happened here. But you can't do that, you have to put that aside.

> I'll be telling you to put things aside probably several times throughout the trial. And you have to make a conscious effort to do that.

The other thing I want to address is when I mentioned there's two sides to everything, but the question is how is that addressed? You know, how are the two sides presented? So it doesn't necessarily have to be from the testimony of the person who's accused in this case. But whatever it is, the state goes first. Generally, as human beings we have a tendency to believe what we hear first. And that's just a fact. In this case you have to make sure that you wait until you've heard all of the evidence in the case before you start drawing conclusions and forming opinions in this case. If you were accused of something and you couldn't do anything about it, you couldn't say anything about it until the very end, you wouldn't want somebody making up their mind before they heard everything, would you? Of course not. You'd want your chance.

So you have to wait until you hear all of the evidence.

¶ 40} In reviewing the statements complained of in the context of the entire voir dire instructions and the trial, we find no error, much less plain error. The trial court did not misstate the burden of proof or appellant's right to remain silent at trial. The trial court's statements did not set an expectation that appellant had to prove his innocence by presenting a defense. This is evident from the trial court's thorough explanation of the burden of proof, appellant's presumption of innocence, and appellant's right not to testify. By describing the "two sides" and inability to prove a negative, the trial court was merely preparing the veniremen for the trial process by using common terminology to explain the legal concepts.

¶ 41} Moreover, appellant has not demonstrated how the trial court's statements affected his substantial rights. The trial court properly instructed the jury on the burden of proof, presumption of innocence, and appellant's right to remain silent at the final jury charge. *State v. Murphy,* 12th Dist. Butler No. CA2007-03-073, 2008-Ohio-3382, ,I 18-23 (no substantial rights affected by jury selection instructions because the final jury instructions were proper).

¶ 42} Accordingly, appellant's first assignment of error is overruled.

*Ruggles I.*

The procedural default doctrine in habeas corpus is described by the Supreme Court as

11

follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)]. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 582 U.S. 521, 527 (2017). "[A] federal court may not review federal claims that

were procedurally defaulted in state courts." *Theriot v. Vashaw*, 982 F.3d 999 (6th Cir. 2020), citing *Maslonka v. Hoffner*, 900 F.3d 269, 276 (6th Cir. 2018) (alteration in original) (quoting *Davila v. Davis*, 582 U.S. 521, 527(2017)).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010)(en banc); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), citing *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986); accord *Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing County Court of Ulster County v. Allen, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under Sykes that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986); *accord, Hartman v. Bagley*, 492 F.3d 347, 357 (6th Cir. 2007), quoting *Monzo v. Edwards,* 281 F.3d 568, 576 (6th Cir. 2002). A habeas petitioner can overcome a procedural default by showing cause for the default and prejudice from the asserted error. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

Ohio's contemporaneous objection rule — that parties must preserve errors for appeal by

13

calling them to the attention of the trial court at a time when the error could have been avoided or corrected, set forth in *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998) — is an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012), citing *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 562 U.S. 876 (2010).

Indeed States have a very strong interest in the contemporaneous objection rule. *Scott v. Mitchell,* 209 F.3d 854 (6th Cir. 2000), quoting extensively from *Wainwright v. Sykes*, 433 U.S. 72, 88-90 (1977).

The Twelfth District enforced the contemporaneous objection rule by reviewing the First Assignment of Error only for plain error. An Ohio state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle*, 271 F.3d 239 (6th Cir. 2001).

Petitioner does not offer any cause and prejudice excuse for this procedural default. Instead he claims he is actually innocent of these crimes of which he was convicted. Proof of actual innocence will enable a habeas petitioner to avoid a procedural default. The controlling precedent on this point is now the Supreme Court's decision in *McQuiggin v. Perkins*, 569 U.S. 383 (2013).

14

[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U. S., at 329, 115 S. Ct. 851, 130 L. Ed. 2d 808; see *House*, 547 U. S., at 538, 126 S. Ct. 2064, 165 L. Ed. 2d. 1 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U. S., at 332, 115 S. Ct. 851, 130 L. Ed. 2d. 808.

\* \* \*

[A] federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown.

*McQuiggin v. Perkins*, 569 U.S. 383, 386-87 (2013).

To satisfy the actual innocence gateway, Ruggles relies on the evidence he presented in support of his Petition for Post-Conviction Relief (Amended Traverse, ECF No. 11).

As discussed further and in more detail in Ground Six below, in his petition for post-conviction relief, Mr. Ruggles presented eighteen exhibits containing evidence outside the trial record to support his numerous claims of ineffective assistance of counsel. (PCR, RE: 4, Ex, 46, PAGEID#352-461). He further argued there were several items of additional evidence not obtained by his trial counsel. Id. This was a he said/she said case, which relied entirely on the testimony of the alleged victims. In such a case, impeachment is imperative and Mr. Ruggles petition for post-conviction relief contained numerous items of impeachment evidence and testimony that was not utilized due to trial counsel's ineffectiveness. The errors committed by trial counsel are overwhelming and alone constitute an injustice. Had the evidence and witnesses discussed in Mr. Ruggles' petition for post-conviction relief been utilized at trial, no reasonable juror would have found Mr. Ruggles guilty beyond a reasonable doubt.

*Id.* at PageID 1417.

As the Supreme Court held in *Bousley v. United States*, 523 U.S. 614 (1998), actual innocence means factual innocence, not legal insufficiency.  The Sixth Circuit has recently held that this means evidence undermining the State's case does not satisfy the *Schlup* standard:

> '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (citing *Sawyer v. Whiteley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)). And in the "gateway" context, our court has said the same thing. *Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 427 (6th Cir. 2003). This means that a petitioner may not pass through the equitable gateway by simply undermining the state's case. Rather, he must demonstrate that he *factually* did not commit the crime. Of course, dismantling the state's case is *relevant* and *helpful* to the petitioner because it leaves a vacuum to be filled by an exonerative explanation; but it is not sufficient in and of itself. This distinction between exonerating evidence and impeachment evidence undergirds both of the Supreme Court's landmark equitable-exception cases. *Schlup*, 513 U.S. at 324, 115 S.Ct. 851; *House*, 547 U.S. at 552–53, 126 S.Ct. 2064.

*Hubbard v. Rewerts,* 98 F.4th 736 (6th Cir. 2024).  The Sixth Circuit has described the kind and quality of evidence required to meet the actual innocence gateway:

> "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321.

*Souter v. Jones,* 395 F.3d 577, 590 (6th Cir. 2005).

Having reviewed the exhibits attached to the Petition for Post-Conviction Relief, the Magistrate Judge concludes that none of them meets any one of three criteria enunciated by the Sixth Circuit in *Souter.*  None of them offer exculpatory scientific evidence.  None of them purports to have been an eyewitness present with Ruggles and either of the victims on the occasions when

the alleged abuse occurred nor does any of them offer a corroborated alibi for Ruggles for any of the relevant times.  None of them present critical physical evidence.  The most substantial of them is the report of Kamala London which displays a deep professional involvement with childhood memories of sexual abuse.  Had her expert opinion been offered at trial it could possibly have undermined the victims' credibility.  But as the Sixth Circuit held in *Hubbard*, undermining the credibility of the State's witnesses is insufficient to establish actual innocence for gateway purposes however persuasive it might have been in getting the jury to acquit.

The new evidence presented by Petitioner with his Petition for Post-Conviction Relief does not satisfy the actual innocence standard and thus does not excuse the procedural default of this Ground for Relief.

If the default were excused and the Court were to reach the merits, the Magistrate Judge believes the Twelfth District's plain error decision would be entitled to deference under 28 U.S.C. 2254(d)(1).  The general instruction language of which Ruggles complains appear to have been "cherry-picked" from the much longer general instruction which appropriately told the jurors to withhold a determination of the facts until all the evidence had been presented.

Because Petitioner has procedurally defaulted his First Ground for Relief, it should be dismissed with prejudice on that basis.  If the Court determines to reach the merits, it should defer under 28 U.S.C. § 2254(d)(1) to the Twelfth District's reasonable application of the law.

**Ground Two:  Prosecutorial Misconduct by Misstating the Law During Voir Dire**

In his Second Ground for Relief, Petitioner complains of prosecutorial misconduct by misstating the law during voir dire.

Respondent asserts this claim is procedurally defaulted by failure to present it on direct appeal to the Ohio Supreme Court (Return of Writ, ECF No. 5, PageID 1322).  Petitioner argues this is not accurate and cites his Memorandum in Support of Jurisdiction on direct appeal. However, while Petitioner mentions that claim as an issue in the case at the place cited by him in his Amended Traverse (the section of a memorandum in support of jurisdiction where an appellant attempts to persuade the Ohio Supreme Court that the case involves issues of general importance), he did not state it as one of the Propositions of Law he was raising on appeal to the Ohio Supreme Court; he mentions it at PageID 230, but not as one of the three propositions of law at PageID 228. Thus the claim of prosecutorial misconduct was not fairly presented to the Supreme Court as an issue for its decision and is therefore procedurally defaulted.

The prosecutorial misconduct claim is also procedurally defaulted by lack of a contemporaneous objection, a default the Twelfth District enforced by only reviewing this claim for plain error as with Ground One.  For the same reasons as with Ground One, this procedural default is in accordance with a long-standing and long-enforced Ohio rule of practice which is an adequate and independent state ground of decision.  Petitioner's claim of excusing actual innocence is also unavailing on this claim. Ground Two should be dismissed with prejudice as procedurally defaulted.

**Ground Three:  Denial of the Right of Confrontation of Witnesses**

In his Third Ground for Relief, Petitioner asserts he was denied his right to confront adverse witnesses when the trial court refused to compel production of the Clark County Domestic Relations Court's 2012 In-Camera Interviews of the victims.  He claims this violated his Sixth

Amendment right of confrontation of these witnesses as binding on the States under the Due Process Clause of the Fourteenth Amendment.

Petitioner raised this claim as his Fourth Assignment of Error on direct appeal and the Twelfth District overruled it. It held the trial court should have conducted an *in camera* review of the interviews, but found that the failure to do so was harmless because the content of the interviews was consistent with the victims' trial testimony, i.e., that they had not revealed any sexual abuse during the interviews. The appellate court held that, although the trial court should have conducted an *in camera* review, failure to do so did not violate the Confrontation Clause, relying on *Pennsylvania v. Ritchie,* 480 U.S. 39 (1987), where the Supreme Court held the Confrontation Clause created a trial right, not a discovery right. Because trial counsel had been permitted broad cross-examination of the victims at trial, including what they said in the interviews, there was no violation of the Confrontation Clause. *Ruggles I* at ¶¶ 10-33.

In his subsequent appeal to the Ohio Supreme Court, Ruggles again made a claim about the undisclosed interview, but based it on a different legal theory, to wit, a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The relevant Proposition of Law in the Supreme Court was "It is error to refuse to allow the defense access to exculpatory evidence despite the sensitive nature of the evidence." (Memorandum in Support of Jurisdiction, State Court Record, ECF No. 4, Ex. 32, PageID 228). In arguing Proposition One, Petitioner relied on *Brady, supra*, which had not been argued to the Twelfth District.

To preserve a federal constitutional issue for habeas corpus review, it must be fairly presented at all levels of the state court system. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy

the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995); *Riggins v. McMackin,* 935 F.2d 790, 792 (6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009).  If a petitioner's claims in federal habeas rest on different theories than those presented to the state courts, they are procedurally defaulted.  *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Lorraine v. Coyle*, 291 F.3d 416, 425 (6th Cir. 2002), *citing Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *Lott v. Coyle*, 261 F.3d 594, 607, 619 (6th Cir. 2001)("relatedness" of a claim will not save it).  Petitioner's Third Ground for Relief should be dismissed as procedurally defaulted.

If the Court were to reach the merits of this Ground for Relief as a Confrontation Clause claim, it would find the claim to be without merit.  As the Supreme Court held in *Pennsylvania v. Ritchie, supra,* the Confrontation Clause creates a trial right, not a discovery right.

**Ground Four:  Denial of Right to Testify**

In his Fourth Ground for Relief, Petitioner claims the State trial court denied him his right to testify in his own defense.  Ruggles presented this as his Fifth Assignment of Error on direct appeal and the Twelfth District decided it as follows:

> ¶ 72} In his fifth assignment of error, appellant argues that he was denied the right to testify and the trial court erred by not conducting a hearing to determine if he expressly waived his right to testify at trial. In support, appellant points to his statements at the sentencing hearing that he "wished he could have gotten up there and taken the stand * *

20

¶ 73} A criminal defendant has the right to testify in his defense at trial. *Rock v. Arkansas,* 483 U.S. 44, 51-53, 107 S.Ct. 2704 (1987). However, when a defendant decides not to testify, this right does not have to be formally waived and "a trial court is not required to conduct an inquiry with the defendant concerning the decision whether to testify in his defense." (Emphasis sic.) *State v. Bey*, 85 Ohio St.3d 487, 499 (1999). This is, because, "[a]lthough the ultimate decision whether to testify rests with the defendant, when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed." *United States v. Webber*, 208 F.3d 545, 551 (6th Cir.2000). Therefore, when the defendant does not testify or notify his counsel of the desire to testify, waiver of the right is presumed. Id.; See also *Bey* at 500 (nothing in the record suggests that the defendant wanted to testify or was denied the opportunity to do so); *State v. Adkins,* 144 Ohio App.3d 633, 645 (12th Dist.2001) (despite some outbursts by the defendant during trial, nothing suggested that the defendant wished to be sworn and testify or that he and his attorney disagreed about the trial strategy they pursued).

¶ 74} Appellant's statements at the sentencing hearing only express his regret in not taking the stand. This is not the same as being denied the right to testify. There is nothing in the trial transcript that signals appellant wanted to testify at trial or that he disagreed with his trial counsel's strategic advice on this matter. Therefore, we presume that appellant waived his right to testify. Furthermore, the trial court did not err when it declined to conduct a su*a sponte* inquiry into appellant's decision not to testify.

¶ 75} Accordingly, appellant's fifth assignment of error is overruled.

*Ruggles I.*

Petitioner did not directly allege trial court error in not allowing him to testify in his Petition for Post-Conviction Relief.  Rather he asserted that Attorney Mulligan's refusal to allow him to testify constituted ineffective assistance of trial counsel as part of his Sixth Ground for Relief for cumulative ineffective assistance.  Specifically he alleged

130. Further, "[t]he right to testify at one's own criminal trial is rooted in the Due Process Clause of the Fourteenth Amendment, the Compulsory Process Clause of the Sixth Amendment, and the Fifth Amendment's privilege against self-incrimination."

21

> *State v. Fry*, 9th Dist. Summit No. 28907, 2019-Ohio-958, 24, citing *Rock v. Arkansas,* 483 U.S. 44, 51-53, 107 S. Ct. 2704, 97 L.Ed.2d 37 (1987).  Denial of the right to testify is a proper issue that may be raised in a petition for post-conviction relief under R.C. 2953.21(A)(l)(a). See *Fry* at ¶¶ 5-6. Although a trial court is not required to conduct an inquiry with the defendant concerning whether he waived his right to testify, the defendant may support the claim in his petition with evidence dehors the record such as case notes taken by the attorney. *Id.* at 15.
>
> 131. Mr. Ruggles wanted to testify at trial, but his trial counsel would not allow it. During a break in the proceedings, while out in the court hallway, Mr. Ruggles clearly informed Mr. Mulligan that he wished to testify, and Mr. Mulligan refused to put him on the stand. Under *Fry*, this issue is properly raised in a petition for post-conviction relief under RC 2953.21(A)(l)(a). Although a trial court is not required to conduct an inquiry with the defendant concerning whether he waived his right to testify, the defendant may support the claim in his petition with evidence dehors the record such as case notes taken by the attorney. In this case, the Petitioner supports his claim with the affidavit of his wife, Janel Ruggles.

(Petition, State Court Record, ECF No. 4, Ex. 39, PageID 382-83).

The trial judge found all of Petitioner's claims in the post-conviction petition were barred by *res judicata* because they were or could have been raised and decided on the basis of the record before the Twelfth District in *Ruggles I.*  (Decision and Entry, State Court Record, ECF No. 4, Ex. 48, PageID 506).  Relying on *State v. Francis*, 2014-Ohio-443, (12th Dist. 2014), and *State v. Calhoun*, 86 Ohio St.3d 279 (1999), paragraph one of the syllabus for authority, he also found the affidavits relied upon by Petitioner to lack credibility.  *Id.* at PageID 507.

Petitioner appealed.  The Twelfth District declined to affirm the *res judicata* holding, but found no abuse of discretion in the trial judge's rejection of the credibility of the supporting affidavits based on factors outlines in the authority the trial judge cited.  *Ruggles II* at ¶¶ 65-68. Ruggles appealed to the Supreme Court of Ohio, but failed to include this claim (Memorandum in Support of Jurisdiction, State Court Record, ECF No. 4, Ex. 55, PageID 616).

22

A criminal defendant has a Sixth Amendment right to testify personally. *Rock v. Arkansas,* 483 U.S. 44, 52-53 (1987).  The decision on whether to testify is one that a defendant must make himself; his attorney cannot make it for him.  Nonetheless, a defendant is presumed to have waived his right to testify unless the record contains evidence indicating otherwise. *Hodge v. Haeberlin*, 579 F.3d 627, 640 (6th Cir. 2009) (citing *United States v. Webber,* 208 F.3d 545, 551 (6th Cir. 2000)).  At the very least, the "defendant must alert the trial court that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand." *Id.*, quoting *Webber*, 208 F.3d at 551.  Absent such a showing, an ineffective assistance of trial counsel claim based on counsel's impairing a defendant's right to testify may not be sustained. *Id.*

Petitioner does not dispute that the first time he told Judge Peeler that he wanted to testify was at sentencing, but the time to have done so was before the defense rested.  In post-conviction his spouse's affidavit purports to report a conversation between Ruggles and Attorney Mulligan: "6. I heard Eric tell Mr. Mulligan that he wanted to testify, and further, heard Mr. Mulligan's response that he would not permit Eric to testify;" (Affidavit, State Court Record, ECF No. 4, Ex. 46, PageID 396).  The Affidavit places this conversation as after the State had rested its case, so there was still time for Ruggles to testify if he wished.  Ruggles own affidavit, strangely, does not corroborate this conversation.  Ruggles does not claim that after this conversation he made his desire to testify known to Judge Peeler at any time before sentencing.

Assuming the accuracy of Janel Ruggles Affidavit, it does not support a finding that the State did anything to prevent Ruggles from testifying.  The Twelfth District reasonably read Ruggles' comment on this point at sentencing as an expression of regret that he had not testified. If instead it is read as a request at that point to be allowed to testify, it would have been clearly without merit because it would have required a mistrial.  To allow a non-testifying defendant to

force a mistrial under these circumstances would impose an enormous cost on the State courts. There is no constitutional authority to support such a rule.

Respondent also asserts this claim is procedurally defaulted because it was not included in Petitioner's appeal to the Ohio Supreme Court. Petitioner makes no response on this point and an inspection of the Memorandum in Support of Jurisdiction does not disclose that this claim was carried forward.

Ground Four should be dismissed with prejudice.


**Ground Five: Conviction Against the Manifest Weight of the Evidence and Based on Legally Insufficient Evidence**

In his Fifth Ground for Relief, Petitioner asserts his conviction was against the manifest weight of the evidence and based on constitutionally insufficient evidence.

Petitioner's manifest weight claim does not state a claim of conviction in violation of the United States Constitution and therefore is not cognizable in habeas corpus. A weight of the evidence claim is not a federal constitutional claim. *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986). Habeas corpus relief is available only for violations of the United States Constitution. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).

An allegation that a verdict was entered upon insufficient evidence, on the other hand, states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the

crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.* A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction. *Musacchio v. United States*, 577 U.S. 237 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold

> the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651 (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam). The federal courts do not make credibility determinations in reviewing sufficiency of the evidence claims. *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

Petitioner presented his insufficiency claim as his seventh assignment of error on direct appeal. The Twelfth District combined its discussion of this and his manifest weight assignment

and decided them as follows:

¶ 80 In appellant's sixth and seventh assignments of error, appellant argues that there was insufficient evidence to convict him and that the guilty verdicts were against the manifest weight of the evidence because there were inconsistencies in the evidence. Appellant, however, has not cited to the record, as required by App. R. 16(A)(7), to support his argument about inconsistent evidence. Nevertheless, we will review the assigned errors on their merits.

¶81} A sufficiency of the evidence challenge involves the determination of whether the conviction can be supported as a matter of law. *State v. Richardson,* 150 Ohio St. 3d 554, 2016-Ohio-8448, ¶ 13. The standard of review for a sufficiency of the evidence challenge is whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Beverly,* 143 Ohio St. 3d 258, 2015-Ohio-219, ¶ 15.

¶ 82} A manifest weight of the evidence challenge examines the inclination of the greater amount of credible evidence, at trial, to support one side over the other. *State v. Peyton,* 12th Dist. Butler No. CA2015-06-112, 2017-Ohio-243, ¶ 42. To determine whether a conviction is against the manifest weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses, and must determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Taylor*, 2019-Ohio-3437 at ¶ 42. An appellate court "must be mindful the trier of fact has the primary role of weighing the evidence and evaluating witness credibility." *State v. Salinger*, 12th Dist. Butler No. CA2014-10-208, 2015-Ohio-2821, 1J 15, citing *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). Therefore, an appellate court will overturn a conviction on a manifest weight challenge "only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal." *State v. Green,* 12th Dist. Warren No. CA2017-11-161, 2018-Ohio-3991, ¶ 26. Finally, this court has explained that a "determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones,* 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

¶ 83} Appellant was convicted of three rape offenses and two sexual battery offenses. Two of the rape offenses were in violation of RC. 2907.02(A)(1)(b), which provides that

> [n]o person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
>
> (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

The other rape offense was in violation of RC. 2907.02(A)(1)(c), which provides that

> [n]o person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
>
> (c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.

The sexual battery offenses were in violation of RC. 2907.03(A)(5), which provides that

> [n]o person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:
>
> > (5) The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person.

Both the rape and sexual battery offenses required proof of sexual conduct. Sexual conduct is defined in R.C. 2907.01 (A) as vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the

body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

¶ 84} After review of the record, we find that appellant's convictions for the three rape offenses and two sexual battery offenses were not against the manifest weight of the evidence. S.D. testified that appellant was her natural father. S.D. also related that the first rape and sexual battery offense occurred when she was around six to seven years old and visiting appellant at his house in Lebanon, Ohio. She was lying in appellant's bed with him to go to sleep for the night when appellant used his finger to penetrate her vagina. This testimony was sufficient to prove sexual conduct. S.D. then testified the other two rape offenses and sexual battery offense occurred when she was ten to eleven years old and visiting appellant at his house in Springboro, Ohio. During this visit she fell asleep on the couch in the living room. She briefly woke up and noticed that she was in appellant's bedroom and appellant was digitally penetrating her vagina. She fell asleep again and then woke up finding appellant over top of her inserting his penis into her vagina. Therefore, S.D.'s testimony was again sufficient to prove sexual conduct in this instance.

¶ 85} Ultimately, S.D.'s testimony was sufficient to convict appellant and the jury did not clearly lose its way in concluding that appellant was guilty of the rape and sexual battery offenses. A conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony. *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17. 9

¶ 86} Next, appellant was convicted of six gross sexual imposition offenses all in violation of RC. 2907.05(A)(4), which provides:

> [n]o person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

> (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

¶87} Sexual contact is defined in RC. 2907.01(8) as

any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.

In order to prove a purpose for sexual gratification, this court has previously held that sexual arousal or gratification may be "inferred from the type, nature, and circumstances of the contact" and therefore, direct testimony of that element is not required. *State v. Gesell*, 12th Dist. Butler No. CA2005-08-367, 2006-Ohio-3621, ¶ 25.

¶88} Again, appellant's convictions for gross sexual imposition were not against the manifest weight of the evidence. Five of the six offenses were against S.D. S.D. testified when she was 5-6 years, the first instance of gross sexual imposition occurred when she was visiting appellant in Waynesville, Ohio. When appellant was tucking her into her bed for the night, he put his hands underneath her underwear and rubbed her vagina. The second instance of gross sexual imposition occurred during appellant's commission of the rape in Lebanon, Ohio when she was six to seven years old. During that encounter, appellant made S. D. touch his penis. The third instance of the gross sexual imposition offenses occurred when S.D. was eight to nine years old. S.D. visited appellant at his parents' house. When appellant and S.D. were upstairs away from the rest of the family, appellant rubbed her vaginal area above her clothes. The fourth and fifth occurrence of gross sexual imposition happened during appellant's commission of the rape and sexual battery offenses at the Springboro, Ohio residence when S. D. was ten to eleven years old.

¶ 89} A.O. testified that when she was around nine years old, she visited appellant at his house in Mason, Ohio. The rest of the family was upstairs asleep while she was downstairs watching a "Dracula" type movie with appellant. She testified that the movie was not appropriate for her age because it was a "scary" movie with blood and scenes of nudity. Appellant told A.O. to come lay on the couch with him. When she moved closer to him, appellant placed one hand under her shirt to touch her chest and the other hand down her pants to touch her vaginal area over the underwear.

¶ 90} Based on the foregoing evidence, the jury did not clearly lose its way in concluding that appellant was guilty of gross sexual imposition in each of these instances. In each instance, there were circumstances such that the "finder of fact was entitled to conclude that there was no innocent or nonsexual explanation for appellant's

30

conduct." *State v. B.J. T.*, 12th Dist. Warren No. CA2016-12-106, 2017-Ohio-8797, ¶ 34. Our determination that these convictions were not against the manifest weight of the evidence is also dispositive of the sufficiency of the evidence challenge. *Jones*, 2013-Ohio-150 at ¶ 19.

¶ 91} Accordingly, appellant's sixth and seventh assignments of error are overruled.

*Ruggles I.*

Respondent asserts this ground for relief is procedurally defaulted because Petitioner failed to carry it forward to the Supreme Court of Ohio on appeal (Return of Writ, ECF No. 5, PageID 1334-35). Petitioner claims he did preserve the claim by including it as one of the issues mentioned in his Memorandum in Support of Jurisdiction (Amended Traverse, ECF No. 11, PageID 1428). Examining that pleading, the Magistrate Judge finds that sufficiency of the evidence was an issue mentioned in introductory portion, but it was not presented as a Proposition of Law to be decided by the Ohio Supreme Court. As with Ground Two, the prosecutorial misconduct claim, the Magistrate Judge finds this does not constitute fair presentation.

In support of his argument that this does constitute fair presentation, Petitioner relies on *Shalash v. Belmont Correctional Institution,* 2020 WL 3166670 (S.D. Ohio Jun. 15, 2020). In the reported opinion, District Judge Timothy Black adopted a report and recommendations of the undersigned recommending dismissal of a sufficiency of the evidence claim as **not** fairly presented to the Ohio Supreme Court on direct appeal for lack of inclusion in a proposition of law. *Shalash* does not support finding fair presentation here.

Because the sufficiency of the evidence claim was not "fairly presented" to the Ohio Supreme Court, that claim is procedurally defaulted. If, however, the Court were to reach the merits of the sufficiency claim, it should defer to the decision of the Twelfth District.

When a state court decides on the merits a federal constitutional claim later presented to a

federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000) *Hendrix v. Palmer*, 893 F.3d 906, 917 (6th Cir. 2018). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

The Twelfth District's decision of the sufficiency claim recited the correct constitutional standard and reasonably applied it. Both victims testified to every essential element of the charges and evidently were believed by the jury. Their testimony alone is legally sufficient. The Sixth Circuit has long held that the testimony of the victim alone is constitutionally sufficient to sustain a conviction. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008), *citing United States v. Terry*, 362 F.2d 914, 916 (6th Cir. 1966) ("The testimony of the prosecuting witness, if believed by the jury, is sufficient to support a verdict of guilty."); see also *O'Hara v. Brigano*, 499 F.3d 492, 500 (6th Cir. 2007) (holding that victim's testimony that habeas petitioner abducted her and raped her was constitutionally sufficient to sustain conviction despite lack of corroborating witness or physical evidence); *United States v. Howard,* 218 F.3d 556, 565 (6th Cir. 2000) (holding that even if the only evidence was testimony of the victim, that is sufficient to support a conviction, even absent physical evidence or other corroboration); *United States v. Jones*, 102 F.3d 804, 807 (6th Cir. 1996) (noting that there is sufficient evidence to support a conviction even if the "circumstantial evidence does not remove every reasonable hypothesis except that of guilt") (internal quotation marks omitted).

The Fifth Ground for Relief should therefore be dismissed with prejudice.


**Ground Six:  Ineffective Assistance of Trial Counsel**


In his Sixth Ground for Relief, Petitioner makes eleven specific claims of ineffective assistance of trial counsel and concludes with a twelfth "cumulative" claim.  The claims are separately numbered with sequential Roman numerals and will be discussed under headings referring to the claims as thus numbered.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice.  *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at

> the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), *citing Strickland, supra.*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland, supra*; *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987), *quoting Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *quoting Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes*, 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id*., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. *Id*., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter*, 562 U.S. 86, 111-112 (2011).

**Ground Six (i): Ineffective Assistance: Failure to Object to Lay Psychological Testimony**

In Ground Six (i) Petitioner claims he received ineffective assistance of trial counsel when his trial counsel allowed both victims to testify at length identifying their medical and psychological conditions and further, concluding that these conditions were caused by Mr. Ruggles.

The Twelfth District considered this claim on direct appeal and held:

> ¶ 59 First, appellant argues that he received ineffective assistance of counsel because trial counsel did not object to the victims' testimonies regarding their diagnoses of psychological disorders, the medications they were prescribed to treat those disorders, and how those disorders were diagnosed later in their life after the alleged offenses occurred. Appellant contends that these statements were essentially expert opinion that allowed the prosecution "to show the sexual abuse occurred through the behavioral manifestations" of the victims.

> ¶ 60 Diagnoses from doctors "may only be established through admission of the relevant doctors' records or the sworn testimony of these doctors." *State v. Fleming*, 12th Dist. Butler No. CA2002-11-279, 2003-Ohio-7005, ¶ 33. Nevertheless, here, it was not ineffective for trial counsel to refrain from objecting to this testimony because it was within reasonable trial strategy. The prosecutor elicited this testimony at the beginning of direct examination to show to the jury that the medical diagnoses and prescribed medications had no impact on the victims' ability to remember past facts or understand questions at the trial. As such, the testimony was not used to prove that sexual offenses occurred, but to show that the victims could reliably testify about the offenses. Therefore, it is unlikely that the trial court would have sustained the objection and counsel is not ineffective for failing to raise a meritless objection. *State v. Taylor*, 78 Ohio St.3d 15, 31, 1997-Ohio-243, 676 N.E.2d 82 (1997). Moreover, the failure to object to these statements was not prejudicial. There is no reasonable probability that, but for this error, the outcome of the trial would have been different, because the psychological disorders had little bearing on the charged offenses.

*Ruggles I.*

35

Respondent asserts this claim for relief is procedurally defaulted because it was not carried forward to the Ohio Supreme Court on appeal. The Magistrate Judge agrees that claim is procedurally defaulted because it was not fairly presented as a Proposition of Law on Supreme Court appeal. Petitioner also raises the actual innocence exception which is unavailing for the reasons already given.

On the merits, Petitioner continues to assert the testimony in question was not admissible lay witness testimony, but required expert opinion. In the Amended Traverse, Petitioner argues this claim entirely in terms of Ohio law, obviously disagreeing with the Twelfth District. But the appellate court held any objection would have been unavailing, rebutting any claim of prejudice. An attorney cannot provide ineffective assistance by failing to make an objection which would have been overruled and the question of whether it should have been overruled is one of Ohio law which a habeas court may not reexamine. *Railey v. Webb*, 540 F.3d 393 (6th Cir. 2008), *quoting Bradshaw v. Richey,* 546 U.S. 74, 76 (2005)("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."), *Maldonado v. Wilson*, 416 F.3d 470 (6th Cir. 2005); *Vroman v. Brigano*, 346 F.3d 598 (6th Cir. 2003); *Caldwell v. Russell*, 181 F.3d 731, 735-36 (6th Cir. 1999); *Duffel v. Dutton,* 785 F.2d 131, 133 (6th Cir. 1986).

Ground Six (i) should be dismissed with prejudice.


**Ground Six (ii):  Ineffective Assistance: Failure to Object to Prior Bad Acts Testimony**

In Ground Six (ii) Petitioner claims he received ineffective assistance of trial counsel when his attorney did not object to the admission of prior bad acts. This claim was raised on direct appeal and decided as follows:

¶ 61 Second, appellant argues that his trial counsel failed to object to several instances of "prior bad acts" that the victims testified appellant committed. These acts include appellant conducting urinary tract infection ("UTI") examinations on the victims from a young age, disparaging comments about the victims' appearances, violent threats appellant made to the victims when they would visit him, and an event where appellant allegedly killed the family's pet dog and cat in front of S. D. in the basement.

¶ 62} Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show that he acted in conformity with that character. Evid. R. 404(8); *State v. Hignite*, 12th Dist. Warren No. CA2015-07-063, 2015-Ohio-5204, ¶ 17. However, such evidence may be admissible if it is offered for purposes other than proving character, including, but not limited to, to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶15-17. To consider the admissibility of other acts, the court must conduct a three-part analysis: (1) determine whether it is relevant to make any fact of consequence to the determination of the action more or less probable than it would be without the evidence; (2) determine if the evidence is used for a legitimate purpose as provided by Evid. R. 404(8); and (3) determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Id.* at ¶¶ 19-20. After our review of the record, each complained of other act evidence was relevant, was used for a legitimate purpose, and the probative value was not substantially outweighed by the danger of unfair prejudice.

*Ruggles I.*

Respondent argues that this is a reasonable determination of the facts and a reasonable application of *Strickland*, but also that the claim is procedurally defaulted because it was not carried forwards to the Supreme Court of Ohio on direct appeal (Return of Writ, ECF No. 5, PageID 1338-390).

In the Amended Traverse, Petitioner argues this was a misapplication of Ohio law on prior bad acts (Amended Traverse, ECF No. 11). This Court cannot reexamine the holding of the Twelfth District on issues of state law for the reasons given above. Furthermore, Petitioner makes

no response to the procedural default argument.

Ground Six (ii) should be dismissed.

**Ground Six (iii):  Ineffective Assistance:  Failure to Object to Improper Vouching**

In Ground Six (iii) Petitioner claims he received ineffective assistance of trial counsel when

Attorney Mulligan did not object to improper vouching by witness Jennifer Knisley.  The Twelfth

District decided this claim as follows:

> ¶ 65 Third, appellant argues that his trial counsel was ineffective for
> failing to object to the testimony of a social worker from CARE
> House because this testimony improperly bolstered the victims'
> credibility. Appellant is correct in that, generally, a witness may not
> give an opinion regarding the veracity of another witness's
> testimony. *See Cappadonia*, 2010-Ohio-494 at ¶ 36; *See also State
> v. Boston*, 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989), paragraph
> one of the syllabus, modified on other grounds, *State v. Dever*, 64
> Ohio St.3d 401, 1992-Ohio-41, 596 N.E.2d 436 (1992) (an expert
> may not testify as to his or her opinion of the veracity of the
> statements of a child declarant). Contrary to appellant's argument,
> though, only statements that directly support the veracity of the
> witness are prohibited. *See Cappadonia*, 2010-Ohio-494 at ¶ 18.

> ¶ 66 Moreover, the Ohio Supreme Court has held that "[a]n expert
> witness's testimony that the behavior of an alleged child victim of
> sexual abuse is consistent with behavior observed in sexually abused
> children is admissible under the Ohio Rules of Evidence." *State v.
> Stowers*, 81 Ohio St.3d 260, 261, 1998-Ohio-632, 690 N.E.2d 881
> (1998).

> ¶ 67 Here, the social worker testified that she conducted several
> forensic interviews with the victims as part of the initial
> investigation into the offenses. The social worker did not directly
> testify as to the veracity of the victims' statements. She testified
> about the phenomena of child sexual offense victims revealing
> offenses perpetrated against them and an explanation of why victims
> may delay their disclosure. Therefore, we find that the social worker
> testified in accord with *Stowers*.

*Ruggles I.* In other words the Twelfth District held there was no deficient performance in failing to object to this testimony because it did not constitute improper vouching under Ohio law. It cannot be deficient performance to fail to make an objection that is meritless.

Respondent asserts this decision is a reasonable application of *Strickland*, but also asserts the claim is procedurally defaulted by failing to carry it forward to the Ohio Supreme Court (Return of Writ, ECF No. 5, PageID 1341). The Amended Traverse asserts that the case depended almost entirely on the credibility of the victims. However, he offers no rebuttal of the Twelfth District's conclusion as a matter of Ohio law, which this Court could not re-examine in any event. He makes no response to the procedural default argument.

Ground Six (iii) should be dismissed with prejudice.

**Ground Six (iv): Ineffective Assistance: Failure to Object to Joinder**

In Ground Six (iv), Petitioner asserts he received ineffective assistance of trial counsel when Attorney Mulligan did not oppose joinder of the two cases involving the two sisters.

Petitioner first pleaded this claim in his Ohio R. App. P. 26(B) Application as an assignment of error which counsel on the direct appeal had not raised, thereby providing ineffective assistance of appellate counsel (Application, State Court Record, ECF No. 4, Ex. 43, PageID 323). The Twelfth District denied that claim, writing:

> Appellant has not established a genuine issue that counsel was ineffective for failing to object to the joinder of the cases because the evidence of each crime was simple and direct. *State v. Ford,* 158 Ohio St.3d. 139, 2019-Ohio-4539, ¶ 104, 110. Moreover, the fact that the jury found appellant not guilty of some offenses alleged by each victim indicates that appellant was not prejudiced by the joinder. *See State v. Addison,* 12th Dist. Clermont Nos. CA2019-07-058· and CA2019-07-059, 2020-Ohio-3500, ¶ 53.

(Entry, State Court Record, ECF No. 4, Ex. 45, PageID 348).

This was a ruling on the merits of Petitioner's ineffective assistance of appellate counsel claim which essentially held Attorney Mulligan did not provide ineffective assistance of trial counsel by failing to oppose joinder because the cases were properly joined under Ohio law and Petitioner suffered no prejudice from the failure to oppose joinder or from the joinder itself.

*Strickland* is applicable to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987). The Twelfth District's decision on this claim of ineffective assistance of appellate counsel is a reasonable application of *Strickland* and is therefore entitled to deference under the AEDPA. Ground Six (iv) should therefore be dismissed on the merits.

Respondent asserts this claim is also procedurally defaulted because Petitioner did not appeal from this decision of the Twelfth District to the Ohio Supreme Court (Return of Writ, ECF No. 5, PageID 1341). Petitioner admits the default, but claims the actual innocence exception (Amended Traverse, ECF No. 11, PageID 1432). As noted above, the "new evidence" submitted with the Petition for Post-Conviction Relief does not satisfy the *Schlup* standard. Appeal to the highest state court with authority to grant relief is required by the exhaustion doctrine; failure to take that step results in defaulting any claims which could have been appealed. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)(citations omitted). Ground Six (iv) should therefore also be dismissed as procedurally defaulted.

**Ground Six (v): Ineffective Assistance: Failure to call as a Defense Witness the States's Medical Expert, Lori Vavul-Roediger**

In Ground Six (v), Petitioner claims he received ineffective assistance of trial counsel when Attorney Mulligan did not call to the stand as a defense witness the State's medical expert.

Petitioner raised this claim in his petition for post-conviction relief and the Twelfth District decided it as follows:

> ¶ 33] Second, Ruggles argues his trial counsel was ineffective because he first "promised the jury" during opening argument that "he would cross examine the State's medical doctor" regarding her report, but then failed to do so. The record reflects defense counsel said the following in his opening statement:
>
>> But the facts are going to show that [Susan] was examined by a medical doctor. That examination took place in September of 2016, some four years after the visitation [with Ruggles] stopped. She's going to testify that there is nothing to back up these claims in the way of physical evidence despite the allegation of vaginal rape, nothing. I actually want you to concentrate on what the doctor says, though. Besides no physical findings, she's going to provide a series of excuses, not proof. At the end of the excuses, however, there's going to be no proof, there are just going to be allegations[.]
>
> ¶ 34] At trial, the state elected not to call Dr. Vavul-Roediger and her report was not introduced or examined. Instead, Jennifer Knisley, the CARE House forensic interviewer, testified regarding the doctor's medical examinations. During closing arguments, Ruggles' trial counsel highlighted to the jury that Dr. Vavul-Roediger did not testify regarding the victims' physical examinations and indicated the reason was due to the lack of physical evidence of rape.
>
> ¶ 35] When considering the above, we conclude Ruggles was not prejudiced by trial counsel's statements or his failure to subpoena Dr. Vavul-Roediger as a witness. First, given the state's subpoena of Dr. Vavul-Roediger, as well as its disclosure of her on the state's witness list, it was reasonable for defense counsel to expect that he would have a chance to cross examine Dr. Vavul-Roediger when the state called her in its case-in-chief. Upon learning the state did not intend to call Dr. Vavul-Roediger, trial counsel strategically questioned the state's motive in declining to present the doctor's testimony and implied the state did not carry its burden of proof.
> [*P36] As noted above, we will not second-guess trial counsel's trial strategy, as even debatable strategy is not a basis for finding ineffective assistance of counsel. *State v. Woody*, 12th Dist. Clinton No. CA2019-01-001, 2020-Ohio-621, ¶ 10. This is especially true where, even if Dr. Vavul-Roediger had testified regarding the

41

> victims' "normal" physical exams, she could have also testified that such results are common in sexual assault cases, and do not confirm that sexual assault did not occur. *See, e.g.*, *State v. Sheldon*, 12th Dist. Brown No. CA2013-12-018, 2014-Ohio-5488, ¶ 23-25 (finding the jury was free to convict the appellant on five counts of rape despite the "normal" physical examination); *State v. Rosas*, 2d Dist. Montgomery No. 22424, 2009-Ohio-1404, ¶ 6 (Dr. Vavul-Roediger indicated no abnormalities in genital areas and a normal hymen does not necessarily mean that a child was not sexually abused). Thus, contrary to Ruggles' arguments on appeal, when considering the nature of Dr. Vavul-Roediger's report and her potential testimony, Ruggles has failed to establish that trial counsel's decision not to call Dr. Vavul-Roediger was detrimental to Ruggles' case.

(Opinion, State Court Record, ECF No. 4, Ex. 53, PageID 596-97).

Respondent defends this claim on the merits, noting that *Strickland* itself forbids second-guessing a defense attorney's trial strategy (Return of Writ, ECF No. 5, PageID 1344-45). Petitioner's Amended Traverse on the merits is unpersuasive. When Attorney Mulligan expected the State to call their identified expert, he predicted to the jury what he would be able to get her to admit on cross-examination, based on her report. Forewarned, the State did not call her. Attorney Mulligan did not therefore get a chance to cross-examine her, but he also did not have to take the bad of her direct testimony to get to whatever good would come out on cross. To argue that a defense attorney is ineffective for failure to call the State's medical expert as his own witness tests the limits of credible advocacy. Ground Six (v) should be dismissed on the merits.


**Ground Six (vi): Ineffective Assistance for Failure to Object to the Evidence of Jennifer Knisley**

In Ground Six (vi) Petitioner claims he received ineffective assistance of trial counsel when Attorney Mulligan allowed social worker Jennifer Knisley to testify without the State having properly lay the foundation for her testimony.

Respondent asserts this claim is procedurally defaulted by Petitioner's failure to raise it on direct appeal.  He first pleaded the issue as an omitted assignment of error in his 26(B) Application and the Twelfth District decided it as follows:

> Finally, appellant has failed to establish that his trial counsel provided ineffective assistance when he failed to object to the trial court's decision to qualify a state's witness as an expert. "Neither special education nor certification is necessary to confer expert status upon a witness. The individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge he or she possesses will aid the trier of fact in performing its fact-finding function." *State v. Hartman,* 93 Ohio St.3d 274, 285 (2001). It was not an abuse of discretion for the trial court to determine the witness had specialized knowledge to be qualified as an expert because the witness testified that she had specialized knowledge of delayed disclosure in sexual abuse victims and the state offered the witness's resume of her education and past employment into evidence. *State v.Kraus,* 12th Dist. Warren No. CA2006-10-114, 2007-Ohio-6027, 1f 42-44.

(Entry, State Court Record, ECF No. 4, Exhibit 45, Page ID 349).  In other words, the Twelfth District held it was not ineffective assistance of appellate counsel to fail to raise this claim of ineffective assistance of trial counsel because the underlying claim was without merit.  Ineffective assistance of counsel can serve as excusing cause for a procedural default, but only when the ineffective assistance of appellate counsel claim has been successfully litigated in the state courts. *Edwards v. Carpenter*, 529 U.S. 446 (2000).  Petitioner has not excused his failure to raise this claim on direct appeal.  Respondent notes the claim is further defaulted by Petitioner's failure to appeal to the Supreme Court of Ohio from the Twelfth District's denial of his 26(B) application.

Petitioner makes no response to either of these procedural default arguments.  Ground Six (vi) should therefore be dismissed.

**Ground Six (vii) and (viii): Ineffective Assistance: Failure to Hire A Medical or Psychological Expert**

In Grounds Six (vii) and (viii) Petitioner claims he received ineffective assistance of trial counsel from Attorney Mulligan when the attorney did not hire and call a medical or a psychological expert. The Twelfth District decided these claims on appeal from denial of the Post-Conviction Petition and wrote:

> [*P28] First, Ruggles argued in his PCR petition that his counsel was deficient for failing to investigate, interview, or subpoena a medical expert. Specifically, he argued that a medical expert could have testified about the lack of physical evidence substantiating Susan's and Ashley's sexual abuse allegations. Ruggles provided the affidavit of Dr. Tabor as an example of the type of medical expert testimony that he believed his counsel should have sought and used to discredit the state's case. According to Ruggles, "medical evidence * * * if presented, would have directly contradicted statements and allegations made by [Susan] at trial and during her [forensic] interview."
>
> [*P29] On appeal, Ruggles correctly acknowledges that, in general, "the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel." *State v. Cooperstein*, 12th Dist. Warren No. CA2018-09-117, 2019-Ohio-4724, ¶ 27, 149 N.E.3d 91. A trial counsel's decision not to seek expert testimony "is unquestionably tactical because such an expert might uncover evidence that further inculpates the defendant." *State v. Lawrence*, 12th Dist. Butler No. CA2018-11-208, 2019-Ohio-2788, ¶ 19, quoting *State v. Glover*, 12th Dist. Clermont No. CA2001-12-102, 2002-Ohio-6392, ¶ 25. It is well settled that debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if a better strategy had been available. *See State v. Phillips*, 74 Ohio St.3d 72, 85, 1995-Ohio-171, 656 N.E.2d 643 (1995). But, having acknowledged these principles, Ruggles contends it is not reasonable trial strategy to "fail to ever consult with a separate, independent medical expert, particularly when such action was requested numerous times" and paid for by Ruggles.
>
> [*P30] After a review of the record, we find that Ruggles has not established ineffective assistance of counsel based on his counsel's purported failure to consult, interview, investigate, or subpoena an independent medical expert. Ruggles avers in his affidavit that trial

44

counsel "never interviewed" an independent medical witness regarding the lack of physical evidence in this case, but Ruggles fails to provide any basis for his purported knowledge—he simply makes a bare assertion. The record and Ruggles' affidavit do not reflect the extent of trial counsel's pretrial investigation into a medical expert. Where the record on appeal does not indicate the extent of counsel's pretrial investigation, an appellate court "will not 'infer a defense failure to investigate from a silent record.'" *State v. Thompson*, 141 Ohio St. 3d 254, 2014-Ohio-4751, ¶ 247, 23 N.E.3d 1096, quoting *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, ¶ 244, 890 N.E.2d 263. Thus, we cannot infer that Ruggles' trial counsel failed to investigate or consult a medical witness.

[*P31] Even if Ruggles' trial counsel failed to consult a medical expert, physical evidence is not required to support a conviction for a sex offense, and the lack of physical evidence does not mean the offense did not occur as testified by a victim. *State v. Wright*, 12th Dist. Fayette No. CA2017-10-021, 2018-Ohio-1982, ¶ 31. Rather, a victim's testimony, if believed, is sufficient to prove sexual conduct, and does not need to be corroborated by physical evidence. *In re B.D.H.*, 12th Dist. Warren No. CA2020-01-001, 2020-Ohio-4879, 2020 Ohio App. LEXIS 3743, *9 (Oct. 13, 2020); *see also State v. Laseur*, 12th Dist. Warren Nos. CA2002-10-117 and CA2002-11-121, 2003-Ohio-3874, ¶ 14. Consequently, if the jury believed Susan's and Ashley's testimonies, any medical expert testimony regarding the lack of physical evidence would not have precluded the jury from finding Ruggles guilty.

[*P32] Moreover, although trial counsel elected not to present testimony from a medical expert, the record indicates he noted to the jury, on several occasions, the lack of physical evidence in this case. Thus, the jury was aware of the lack of physical evidence before finding Ruggles guilty. Dr. Tabor's affidavit merely repeats what the jury already knew.

* * *

[*P38] Ruggles next argued in his PCR petition that his trial counsel provided ineffective assistance because he failed to interview, investigate, or subpoena a psychologist expert. Ruggles claimed expert psychologist testimony like Dr. London's would have undermined the jury's confidence in a guilty verdict against Ruggles because the psychologist expert "would have testified at length to the pattern of disclosure displayed by [Ashley] and [Susan]." In other words, Ruggles believes Dr. London or a similar expert would

45

have cast doubt on Ashley and Susan's truthfulness based on their years-delayed reporting of their father's sexual abuse.

[*P39] As with his averment regarding his trial counsel's alleged failure to investigate a medical expert, Ruggles failed to provide any basis of knowledge for his assertion in his affidavit that his trial counsel failed to consult a psychologist expert as part of his pretrial investigation. In other words, Ruggles does not provide a cogent basis for concluding that his counsel failed to consult a psychologist expert. *See Thompson*, 2014-Ohio-4751 at ¶ 247. What the record does reflect is that instead of retaining a psychologist expert, Ruggles' trial counsel attacked the evolving, changing nature of the victims' stories through cross-examination. In so doing, trial counsel thoroughly cross-examined Susan and Ashley, exposing that they disclosed emotional, mental, and spiritual abuse but not sexual abuse prior to 2016 and 2018, respectively, and exposing how their stories about Ruggles' behavior towards them changed and evolved from 2012 to 2018. Trial counsel highlighted several inconsistencies between the victims' testimonies at trial and their prior forensic interviews, as well as inconsistencies between each sister's version of events.

[*P40] As noted above, it is well settled that declining to call an expert and opting to rely on cross-examination, as trial counsel opted to do in this case, does not amount to ineffective assistance of counsel. *State v. Myers*, 12th Dist. Warren No. CA2019-07-074, 2021-Ohio-631, ¶ 106, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 66, 960 N.E.2d 955. This court will not second-guess trial counsel's trial strategy, which we note resulted in Ruggles' acquittal on three counts of rape against Susan and one count of gross sexual imposition against Ashley

[*P41] Nor do we agree that testimony from an expert like Dr. London would have changed the outcome of this case. In her affidavit, Dr. London initially states it is possible that Susan and Ashley did not report Ruggles' sexual abuse during earlier interviews but felt compelled to disclose the abuse in their forensic interviews several years later. Thus, although Ruggles claims Dr. London's testimony could have undermined the jury's confidence in the verdict, it is also possible that Dr. London's testimony would have solidified to the jury that the victims' disclosures, though delayed, were unaltered and truthful.

[*P42] Furthermore, Dr. London's opinion that the victims may have been influenced to reconstruct their memory to fit their negative perception of Ruggles is pure speculation. That is, Dr. London offers

no evidentiary basis to support the possibility that Susan and Ashley were influenced before their forensic interviews or by whom. Rather, Dr. London simply assumes outside influence occurred based on the dates when the victims finally disclosed Ruggles' sexual abuse.

[*P43] Consequently, and based on the above, we conclude Ruggles failed to set forth sufficient operative facts to establish that trial counsel engaged in ineffective assistance of counsel with respect to his alleged failure to interview, investigate, or subpoena a psychologist expert.

*Ruggles II.*

Respondent defends these claims on the merits, asserting the Twelfth District's decision is entitled to deference under AEDPA. Petitioner's Amended Traverse reargues the merits, but provides no basis for finding that the Twelfth District did not reasonably apply *Strickland* by finding the complained-of omissions by Attorney Mulligan were appropriate trial strategy. Grounds Six (vii) and (viii) should be dismissed on the merits.

## Ground Six (ix): Ineffective Assistance by Failure to Present Documents

In Ground Six (ix) Petitioner asserts he received ineffective assistance of trial counsel when Attorney Mulligan failed to present various available documents which are said to be impeaching of the victims' testimony. The Twelfth District considered this claim on appeal from denial of the Petition for Post-Conviction Relief and wrote:

### 3. Failure to Seek Counseling and Medical Records

¶ 44} Ruggles next argued in his PCR petition that his trial counsel was ineffective because he never investigated or attempted to obtain the victims' counseling records. Ruggles was somewhat vague in identifying these records, but it appears he was referring to records from Susan's counseling sessions in 2012 and any counseling that

47

followed the victims' initial interviews with Knisely. Ruggles claimed Susan's and Ashley's counseling records were "critical" for the jury to assess the reliability and credibility of their testimonies. Ruggles also claimed Susan's and Ashley's counseling records would support Dr. London's testimony regarding the victims' delayed disclosure of Ruggles' sexual abuse and possible memory reconstruction.

¶ 45} Yet again, Ruggles fails to identify any basis for his knowledge about the steps his trial counsel took or did not take to obtain the counseling records. The only two documents Ruggles cites in support of this argument-the affidavits of Dr. London and the timeline prepared by Angela Dom-do not provide any other information about trial counsel's purported failure to pursue the counseling records. Ruggles therefore does not provide a cogent basis for concluding that his trial counsel failed to seek Susan's and Ashley's counseling records. On the contrary, the record shows that Ruggles' trial counsel filed a motion to obtain the 2012 in camera interviews and certain records from the Clark County children services agency. Although the trial court denied both requests, and counsel could not obtain the records, such motions are indicative of counsel's pretrial attempts to obtain at least some of the children's records that Ruggles argues trial counsel should have sought.

¶ 46} We also find that Ruggles' assertion that the victims' counseling records would have had a material effect on the outcome of the trial is purely speculative. Ruggles' trial counsel already cross-examined Susan and Ashley about their changing stories and highlighted those changes to the jury. To the extent Ruggles argues that the counseling records would have further impeached Susan's and Ashley's testimony by supporting the testimony of an expert like Dr. London, Ruggles is simply suggesting a different strategy than the one pursued by his trial counsel. It was not ineffective assistance of counsel to rely on cross-examination instead of retaining an expert witness to impeach Susan and Ashley. *Myers,* 2021-Ohio-631 at ¶ 106.

¶ 47} Accordingly, because there is no evidence that Ruggles was prejudiced by the absence of the victims' counseling records and because Ruggles has offered no cogent evidence suggesting that his trial counsel's performance in this respect was deficient, Ruggles has failed to establish that trial counsel engaged in ineffective assistance of counsel regarding the counseling records. *See State v. Fraker,* 3d Dist. Union No. 14-12-19, 2013-Ohio-4561, ¶ 56-58.

*Ruggles II.*

48

Respondent argues this is a reasonable application of *Strickland* and therefore entitled to AEDPA deference. The Amended Traverse argues the impeachment value of the omitted records, but fails to rebut the factual findings of the Twelfth District about trial counsel's efforts or its legal conclusion that the decision not to submit these records was an appropriate strategic decision, immune from hindsight under *Strickland*. Ground Six (ix) should be dismissed on the merits.

**Ground Six (x): Ineffective Assistance: Failure to Present Impeachment Evidence of Motive or Bias**

In Ground Six (x) Petitioner asserts he received ineffective assistance of trial counsel when Attorney Mulligan failed to present a number of items of impeachment evidence. The Twelfth District decided this claim on appeal from dismissal of the Post-Conviction Relief Petition, writing:

> ¶ 48] Ruggles next argued in his PCR petition that his trial counsel was ineffective because he failed to present evidence impeaching Susan with respect to her prior, allegedly unsubstantiated allegations of molestation against Angela's ex-boyfriend, Chad Frank. Ruggles failed to attach to his PCR petition any credible evidence or affidavit signed by Frank regarding the nature of Susan's allegations. Thus, any assertion regarding those allegations, their falsity, and their materiality to Ruggles' convictions is pure speculation. Without knowing the extent and circumstances of the allegations, we cannot infer that any cross-examination of Susan regarding the allegations would have been beneficial to Ruggles or admissible at trial.

> ¶ 49] In any event, the record reflects that Ruggles' trial counsel attempted to obtain Susan's children services' file pertaining to her allegations against Frank, but his request was denied by the trial court on the basis of relevance and admissibility under R.C. 2907.02(D), Ohio's rape shield law. Thus, the record shows his counsel did take steps to pursue the evidence Ruggles now complains he did not present.

> ¶ 50] Ruggles also argued that his trial counsel failed to question Susan about her failure to disclose Ruggles' abuse of her in the 2012 in camera interview or to her guardian ad litem in 2012. But a review

of the transcript here indicates Ruggles' trial counsel did in fact cross-examine Susan about her failure to disclose Ruggles' abuse prior to the forensic interview in 2016. Thus, more specific testimony regarding the 2012 in camera interview or the guardian ad litem report would have been cumulative at best. "The failure to put on cumulative evidence is not indicative of ineffective assistance of counsel." *Long*, 2021-Ohio-3651 at ¶ 38, citing *State v. Kean*, 10th Dist. Franklin No. 17AP-427, 2019-Ohio-1171, ¶ 98.

¶ 51] Additionally, any testimony regarding the guardian ad litem report would have highlighted the true nature of Susan's and Ashley's relationship with Ruggles. The report included information about specific allegations of Ruggles' emotional, mental, and spiritual abuse of Susan and Ashley. In light of the report's contents, it was not ineffective for counsel not to question Susan about the report specifically or to admit the report into evidence. Statements about Ruggles' other, non-sexual forms of abuse of Susan and Ashley would have been detrimental to his trial counsel's trial strategy.

¶ 52] Ruggles also argued that his counsel was ineffective in declining to present evidence of Susan's and Ashley's motive to provide false testimony. Specifically, Ruggles argued that his trial counsel should have questioned the victims' mother, Angela, regarding the possibility that Susan and Ashley alleged sexual abuse (which they had not previously alleged) only in response to Ruggles' intention to challenge the legitimacy of Susan's and Ashley's adoption by their stepfather. We find no merit to this argument because the record indicates both victims offered explanations for their eventual disclosures and neither related to their adoption. As such, when considering the victims' testimonies regarding the reasoning behind their delayed disclosure, testimony concerning Ruggles' desire to contest the adoption would not have established any motive for the children to fabricate the abuse.

¶ 53] Lastly, Ruggles' argument is undermined by the evidence attached to his PCR petition, including a "timeline of events" prepared by Angela. In the timeline, Angela indicates Ruggles consented to the adoption so long as his child support would stop. Thus, even if trial counsel had called Angela to testify regarding the adoption, her testimony would have, presumably, been consistent with her timeline of events and would not have provided any evidence of the victims' motive as alleged by Ruggles.

¶ 54] Accordingly, because we find no deficiency in trial counsel's strategy to avoid discussing the adoption proceedings, Susan's prior

allegations of sexual abuse by Chad Frank in Clark County, and the nature of the 2012 guardian ad litem report, Ruggles cannot establish a claim of ineffective assistance of counsel on such grounds. That is, Ruggles has failed to provide cogent evidence that his trial counsel's performance in this respect was deficient, and has failed to establish that trial counsel engaged in ineffective assistance of counsel with respect to presenting impeachment evidence and evidence of the victims' motives or biases.

*Ruggles II.*

Respondent defends this decision as a reasonable application of *Strickland* entitled to deference under the AEDPA. Petitioner supports this claim in the Amended Traverse with a re-argument of what the value of the omitted evidence might have been. The argument is unpersuasive in that it does not suggest why omission of all this material was not a wise strategic decision by Attorney Mulligan. Ground Six (x) should be dismissed on the merits in deference to the Twelfth District's reasonable application of *Strickland*.

**Ground Six (xi): Ineffective Assistance: Failure to Call Witnesses**

In Ground Six (xi) Petitioner claims he received ineffective assistance of trial counsel when Attorney Mulligan did not call as witnesses any of the eighteen people to whom Petitioner referred him except Petitioner's spouse, who he says was not prepared. The Twelfth District affirmed the trial court's dismissal of this claim, writing:

> ¶ 55] Prior to trial, Ruggles sent his counsel emails in which he identified 21 potential witnesses and described their proposed testimony. Ruggles in his PCR petition argued his trial counsel was ineffective because he failed to investigate, contact, interview, prepare, or subpoena 15 of those potential witnesses. Ruggles believes that those witnesses' testimonies would have been beneficial to his defense. In support, Ruggles attached the emails to his trial counsel, as well as the affidavits of four family members whom he had identified as potential witnesses. Each of the affiants indicated they were present in Ruggles' home with the victims

51

during the relevant time period and never observed any inappropriate behavior between Ruggles and Susan or Ashley. Ruggles also attached the affidavit of the former supervisor of Ruggles' wife Janel. The supervisor averred Janel never worked weekend-night shifts, contrary to Susan's testimony.

¶ 56] The record reflects Ruggles' trial counsel subpoenaed eight of the witnesses identified in Ruggles' emails, as well as additional witnesses not identified by Ruggles. Despite subpoenaing several witnesses, counsel only called Janel, Ruggles' wife, to testify in his case-in-chief. Janel contradicted Susan's testimony on a number of points, including whether Ruggles interacted with Susan when Janel saw Susan at Scene 75. She also denied engaging in inappropriate behavior with the victims, and denied other events described by Susan during trial. Janel further indicated that she only scheduled visitations with the girls when she would be home, and that she was present every evening that Susan and Ashley were at the home with Ruggles.

¶ 57] After a review, we find nothing unreasonable or insufficient in counsel's presentation of, and investigation into, his case-in-chief. In general, "counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." *State v. Treesh*, 90 Ohio St.3d 460, 490, 2001-Ohio-4, 739 N.E.2d 749 (2001); *State v. Hubbard*, 12th Dist. Butler Nos. CA2006-09-216 and CA2006-00-231, 2007-Ohio-6029, ¶ 29. Here, it was legitimate trial strategy to rely on Janel's testimony in Ruggles' defense. While Ruggles claims additional testimony could have been helpful, the potential testimony recited in his relatives' affidavits is merely cumulative to Janel's testimony and does not prove Ruggles did not abuse the victims as alleged. Specifically, although Ruggles' family members were present in the home at times and did not see any inappropriate behavior between Ruggles and his daughters, such testimony is less persuasive than Janel's testimony that she was present on every occasion the girls were in their home. Also, being Ruggles' wife and the victims' stepmother, Janel likely had the best knowledge of the nature and details of Ruggles' relationship with his daughters. And of course, the fact that certain relatives did not see Ruggles sexually abuse or act inappropriately with Susan and Ashley does not mean that the acts alleged by Susan and Ashley did not occur at other times when those relatives were not present. As a result, it is unlikely the additional cumulative testimony from the proposed witnesses would have changed the outcome of Ruggles' case.

¶ 58] We likewise conclude that testimony from Janel's former supervisor about Janel's employment schedule was unnecessary. As noted above, Janel's testimony contradicted Susan's testimony that the abuse often occurred when Janel was at work on the weekends. The jury was free to believe or disbelieve the testimony related to Janel's work schedule. Consequently, while third party corroboration may have been helpful, it was not ineffective for counsel not to present the cumulative testimony of Janel's former supervisor. *Long*, 2021-Ohio-3651 at ¶ 38.

¶ 59] Accordingly, because Ruggles failed to provide cogent evidence suggesting that his trial counsel's performance in this respect was deficient, Ruggles has failed to establish that trial counsel engaged in ineffective assistance of counsel with respect to counsel's investigation, subpoenaing, and interviewing of potential witnesses.

*Ruggles II*.

As with prior sub-claims of Ground Six, Respondent defends this decision as a reasonable application of *Strickland* entitled to deference under the AEDPA. Petitioner responds by reiterating the arguments stated in the Post-Conviction Petition without rebutting the Twelfth District's conclusion that omitting these witnesses was sound trial strategy. Sometimes courts use the words "trial strategy" as a talismanic phrase designed to dispose of ineffective assistance of trial counsel claims without analysis. But in this and the prior sub-claims, the Twelfth District analyzed the trial record with care before adopting that label. Petitioner cannot undercut that analysis by merely repeating the ineffective assistance of trial counsel claims as made in the Common Pleas Court. Petitioner has also not rebutted the Twelfth District's conclusion that much of the proposed impeachment evidence would have been excludable as cumulative.

Ground Six (xi) should be dismissed.

## Ground Six (xii): The Cumulative Effect of Ineffective Assistance of Trial Counsel

In Ground Six (xii) Petitioner asserts that the cumulative effect of the ineffective assistance

of trial counsel detailed in Grounds Six (i) through (xi) renders his conviction unconstitutional.

Respondent asserts cumulative error claims such as this one are not cognizable in habeas corpus.

Petitioner replies that they are, but the Sixth Circuit has held to the contrary. "Sheppard argues

that the cumulative effect of these errors rendered his trial fundamentally unfair. Post-AEDPA,

that claim is not cognizable." *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011), *cert. denied,*

132 S.Ct. 2751 (2011), *citing Moore v. Parker,* 425 F.3d 250, 256 (6th Cir. 2005), *cert. denied sub*

*nom. Moore v. Simpson,* 549 U.S. 1027 (2006).

> Moreland argues that the cumulative effect of counsel's errors
> should be considered in determining whether he has demonstrated a
> reasonable probability of a more favorable outcome. However,
> "post-AEDPA, not even constitutional errors that would not
> individually support habeas relief can be cumulated to support
> habeas relief." *Hoffner v. Bradshaw*, 622 F.3d 487, 513 (6th Cir.
> 2010) (quoting *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)).

*Moreland v. Bradshaw*, 699 F.3d 908, 931 (6th Cir. 2012), *cert. denied sub nom. Moreland v.*

*Robinson*, 134 S. Ct. 110 (2013). See also *Ahmed v. Houk*, 2014 U.S. Dist. LEXIS 81971, *332

(S.D. Ohio 2014). Ground Six (xii) should be dismissed as non-cognizable.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge recommends that the Petition be

dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it

is also recommended that Petitioner be denied a certificate of appealability and that the Court

certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be

permitted to proceed *in forma pauperis*.


June 27, 2024


## NOTICE REGARDING OBJECTIONS


Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #


s/ *Michael R. Merz*
United States Magistrate Judge
