UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ERIC RUGGLES,

          Petitioner,

            Case No. 1:23-cv-477

      v.

WARDEN, LONDON
CORRECTIONAL INSTITUTION,

            JUDGE DOUGLAS R. COLE
            Magistrate Judge Merz

          Respondent.

## OPINION AND ORDER

Petitioner Eric Ruggles seeks a writ of habeas corpus under 28 U.S.C. § 2254, challenging his convictions in the Warren County Court of Common Pleas. (*See generally* Pet., Doc. 1). Respondent Warden, London Correctional Institution, filed an initial Return of Writ, requesting dismissal of Ruggles' claims. (Doc. 5). After Ruggles filed his Traverse (Doc. 8) and Amended Traverse (Doc. 11), Magistrate Judge Merz issued a Report and Recommendation (R&R, Doc. 13) and a Supplemental R&R (Doc. 27), recommending that the Court dismiss the Petition.[1] After repeated motions to extend time, Ruggles objected to both of those. (Docs. 25, 28).

For the reasons below, the Court **OVERRULES** Ruggles' Objections to the R&R and Supplemental R&R (Docs. 25, 28) and **ADOPTS** the R&R (Docs. 13), except where it has been modified by the Supplemental R&R (Docs. 27), which the Court also **ADOPTS**. Accordingly, the Court **DISMISSES WITH PREJUDICE** Ruggles'

---

[1] Since this is a non-capital habeas case and Ruggles is seeking relief under 28 U.S.C. § 2254, the Court referred the matter to a Magistrate Judge under this Court's General Order 22-05.

Habeas Petition (Doc. 1). Because the Court further agrees with the Magistrate Judge that reasonable jurists would not disagree with these conclusions, the Court **DENIES** Ruggles a certificate of appealability and **CERTIFIES** that any appeal of this Opinion and Order would be objectively frivolous.

## BACKGROUND

### A.    State Court Proceedings.

A grand jury in the Warren County, Ohio, Court of Common Pleas indicted Petitioner Ruggles in case number 17CR33134 on June 19, 2017. (State Ct. R., Doc. 4, #38–44). That indictment alleged that Ruggles committed seventeen counts of various sexual offenses against his older biological daughter, S.D., from 2003 to 2012. (*Id.*). Then, on December 21, 2018, a grand jury indicted Ruggles on two more sexual offenses he allegedly committed against his younger daughter, A.D., from 2010 to 2012. (*Id.* at #71–73). The trial court consolidated those cases for trial. (*Id.* at #83, 85).

After a three-day trial in March 2019, a jury convicted Ruggles of three counts of rape, five counts of gross sexual imposition, and two counts of sexual battery involving S.D. as the victim; the jury also convicted him of one count of gross sexual imposition involving A.D. as the victim. (*Id.* at #87, 94). It found him not guilty of the remaining offenses. Merging several of the convicted counts against S.D., the trial court sentenced Ruggles for those offenses to a total sentence of life in prison without consideration for parole until he has served fifteen years. (*Id.* at #90–91). Then,

regarding the offense against A.D., the court sentenced Ruggles to an additional sixty months to run consecutive to his other sentence. (*Id.* at #97).

Ruggles, represented by new counsel, appealed. But Ohio's Twelfth District Court of Appeals affirmed his convictions. *State v. Ruggles* (*Ruggles I*), 154 N.E.3d 151 (Ohio Ct. App. 2020). Then, represented by yet *different* counsel, Ruggles moved under Ohio Rule of Appellate Procedure 26(B) to reopen that appeal, pleading three claims of ineffective assistance of his previous appellate counsel based on that counsel's failure to advance three claims of ineffective assistance regarding his trial counsel. (Doc. 4, #321–32). The court denied that application, finding that Ruggles failed to raise a genuine issue as to whether appellate counsel was ineffective. (*Id.* at #346–50). Separately, while that application was pending, Ruggles also appealed his conviction to the Ohio Supreme Court, who declined to hear the case. *State v. Ruggles*, 156 N.E.3d 915 (Ohio 2020) (Table).

Ruggles next turned to various attempts at state post-conviction relief. On October 20, 2020, shortly before the Ohio Supreme Court declined to hear his direct appeal, Ruggles filed a petition to vacate or set aside his judgment of conviction under Ohio Revised Code § 2953.21 in the Warren County Court of Common Pleas. (Doc. 4, #352). This petition, based on his trial counsel's allegedly ineffective assistance, repeated many of the same arguments as his previous appeals. (*Id.* at #352–87). In total, Ruggles argued six grounds for relief based on ineffective assistance of counsel: (1) failure to interview, investigate, and subpoena a medical expert; (2) failure to interview, consult, investigate, or subpoena a psychologist expert; (3) failure to seek

counseling and medical records; (4) failure to present impeachment evidence and failure to provide motive or bias; (5) failure to investigate, interview, or subpoena other witnesses (and lying to Ruggles about having contacted them); and (6) cumulative ineffective assistance of counsel based on the above failures as well as counsel's failure in preventing Ruggles from testifying at trial, failure to oppose the joinder of the two ongoing cases, and failure to adequately prepare for trial. (*Id.* at #363–85). Ruggles attached various documents in support of his petition, including affidavits from potential witnesses stating that they were never contacted by Ruggles' trial counsel. (*Id.* at #392–461).

The state moved to dismiss the petition, (*id.* at #463), which the court granted, (*id.* at #503). First, the trial court found that res judicata barred the petition because Ruggles' claims that he was prejudiced by his previous counsel's failures "could have and should have been raised on direct appeal." (*Id.* at #506). Indeed, the court noted that Ruggles had already raised several different allegations of ineffective assistance of counsel during that appeal, and the appellate court had found them all meritless. (*Id.*). Second, the court found that even if res judicata did not bar the petition, Ruggles' arguments still failed because he could not show that his past representation "fell below an objective standard of reasonableness, and that there is a reasonable probab[ility] that, but for that defective representation, the outcome of the proceeding would have been different." (*Id.*).

Ruggles appealed that decision. (*Id.* at #510, 518–33). The Twelfth District once again affirmed. *State v. Ruggles (Ruggles II)*, 2022-Ohio-1804 (Ohio Ct. App.

4

2022). There, the appeals court addressed each of Ruggles' six grounds for relief based on ineffective assistance of counsel and found that the trial court did not abuse its discretion when it rejected each of them on the merits. *Id.* ¶¶ 26–76. And because the claims failed on the merits, the appellate court declined to decide whether the trial court properly held that res judicata applied to all of Ruggles' arguments. *Id.* ¶ 77. Ruggles again sought review in the Ohio Supreme Court. (Doc. 4, #613–14). But that court once again declined to hear the appeal, bringing the state proceedings in this matter to a close. (*Id.* at #653); *State v. Ruggles*, 195 N.E.3d 165 (Ohio 2022) (Table).

## B.     Federal Habeas Petition.

On July 27, 2023, Ruggles filed his Petition for Writ of Habeas Corpus in this Court, pleading six grounds for relief, each accompanied by supporting facts. (Doc. 1). The Court recounts the grounds here:

> **Ground One**: The trial court violated Mr. Ruggles' constitutional right to the presumption of innocence, with no duty to present evidence.
>
> **Ground Two**: The State committed prosecutorial misconduct during voir dire, violating Mr. Ruggles' constitutional right to a fair trial, as guaranteed by the Due Process Clause.
>
> **Ground Three**: The decision of the State Court denying Mr. Ruggles' motion for order to produce the Clark County Domestic Relations Court's 2012 in-camera interviews of S.D. and A.D. denied Mr. Ruggles his Sixth Amendment right to confront witnesses against him and his Fourteenth Amendment right to due process of the law.
>
> **Ground Four**: The State Courts below violated Mr. Ruggles' Sixth Amendment right to testify.
>
> **Ground Five**: Mr. Ruggles' convictions were based on legally insufficient evidence and against the manifest weight of the evidence, Mr. Ruggles was denied due process of the law, as guaranteed by the Fourteenth Amendment to the Constitution of the United States.

5

**Ground Six**: Mr. Ruggles was denied his right to effective assistance of counsel, as guaranteed by the Sixth Amendment to the United States Constitution and the Constitution of the State of Ohio for the following errors of trial counsel each alone and cumulatively:

i) Trial counsel was ineffective when he failed to object to lay witness testimony that the alleged victims suffered psychological injuries as a result of Mr. Ruggles' conduct.

ii) Trial counsel was ineffective when he failed to object to the State's evidence of prior bad acts that were irrelevant to the charges against Mr. Ruggles.

iii) Trial counsel was ineffective when he failed to object to Jennifer Knisley's testimony improperly vouching for the credibility of the alleged victims.

iv) Trial counsel was ineffective when he failed to object to the State's motion to join the two cases and further failed to object to the court's consolidation of the two cases.

v) Trial counsel was ineffective when he failed to subpoena or call as a witness Dr. Lori Vavul Roediger, a witness on the State's witness list which defense counsel promised the jury, during his opening statement, would testify at trial.

vi) Trial counsel was ineffective when he failed to object to the State's witness Jennifer Knisley, being certified as an expert witness.

vii) Trial counsel was ineffective when he failed to interview, investigate, or subpoena a medical expert.

viii) Trial counsel was ineffective when he failed to interview, investigate, or subpoena a psychological expert.

ix) Trial counsel was ineffective when he failed to obtain counseling or medical records for use in impeaching the alleged victims.

x) Trial counsel was ineffective when he failed to present available impeachment evidence or provide a motive/bias.

xi) Trial counsel was ineffective when he failed to investigate, interview, or subpoena other impeachment witnesses.

6

xii)     Trial counsel's cumulative errors prejudiced Mr. Ruggles.

(*Id.* at #6–11, 18–20).

Respondent Michael DeMartino, the warden of the London Correctional Institution, filed a Return of Writ on September 29, 2023. (Doc. 5). There, he argues that the Court should dismiss Ruggles' Petition for Writ of Habeas Corpus because his claims are either procedurally defaulted, non-cognizable, or lacking in merit. (*Id.* at #1364). Ruggles, after the Magistrate Judge granted him two extensions of time, replied in his Traverse (Doc. 8) that "Respondent's assertions of procedural default are belied by the record of direct review proceedings in this case or overcome by Mr. Ruggles' miscarriage of justice." (*Id.* at #1407). He also reaffirmed the merit of his claims. (*Id.*). Finally, after another three months, Ruggles, with the Court's leave, filed an Amended Traverse further arguing against procedural default and in favor of his claims. (Doc. 11).

After that, on June 27, 2024, the Magistrate Judge issued a Report and Recommendation analyzing each of Ruggles' grounds for relief. (Doc. 13). The Court discusses each of those recommendations below, but in sum, Ruggles failed to convince the Magistrate Judge, so he recommends the petition be dismissed with prejudice. (*Id.* at #1508). And finding that no reasonable jurists would disagree with that conclusion, the Magistrate Judge also recommends that the Court deny Ruggles a certificate of appealability and the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed in forma pauperis. (*Id.*).

In the R&R, the Magistrate Judge instructed Ruggles that he had fourteen days from service to object, and that failure to do so would forfeit rights on appeal. (*Id.* at #1509). Within that time, Ruggles moved for a forty-five-day extension of the time in which to object, (*see* Doc. 14), which the Magistrate Judge granted. But before Ruggles filed his objections, he again asked for more time. (Doc. 16). This time his counsel also requested to withdraw, stating that Ruggles "wishes to seek new counsel for this matter." (Doc. 17, #1514). The Magistrate Judge again granted both motions, giving Ruggles until October 25, 2024, to file his objections. (Docs. 18, 19). But when that day came, he again requested more time, this time seeking a sixty-day extension. (Doc. 20). At the same time, due to his indigent status, he asked the Court to appoint counsel to represent him. (Doc. 21). That same day, the Magistrate Judge denied Ruggles' requests for appointed counsel and a sixty-day extension, but granted him twenty-one days until November 15, 2024, to object. (Doc. 22, #1523). Apparently Ruggles obtained new representation, because one day before the Court's thrice-extended deadline, his new counsel moved for yet another month-long extension, telling the Court that he had been hired only that morning. (Doc. 23, #1525). The Magistrate Judge once again extended the deadline. (Doc. 24). The last day he could do so, Ruggles finally filed objections (Doc. 25).

Ruggles' objections, which the Court discusses below, cover each of his grounds. As to each, he challenges certain findings the Magistrate Judge made and agrees with others. (*Id.*). This Court, after reviewing those objections, returned the matter to the Magistrate Judge with instructions to file a supplemental report analyzing those

8

objections and providing recommendations to the Court. (Doc. 26, #1542). So, the Magistrate Judge, determining that Ruggles objected to findings on grounds for relief one, two, and six,[2] reviewed the R&R in light of those objections. (Doc. 27). But the Magistrate Judge again came to the same conclusion, and again recommends the Petition be dismissed with prejudice. (*Id.* at #1557). Finally, Ruggles, once again, objected, largely restating his previous objections. (Doc. 28).

With that, Ruggles's Petition is now ripe for the Court's review.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 72(b)(3), for dispositive matters "district courts review an R&R de novo after a party files a timely objection." *Bates v. Ohio Dep't of Rehab. & Corr.*, No. 1:22-cv-337, 2023 WL 4348835, at *1 (S.D. Ohio July 5, 2023). But that review extends only to "any portion to which a proper objection was made." *Id.* (citation omitted). In response to such an objection, "the district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* (cleaned up) (quoting Fed. R. Civ. P. 72(b)(3)). A "proper" objection, however, means a specific one. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). If a party makes only a general objection—one which fails to set forth the grounds with any specificity—that "has the same effect[] as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). In other words, a litigant must identify, with sufficient

---

[2] Ruggles also maintains that he objected to the R&R's findings regarding Ground Five. (Doc. 28, #1562).

9

clarity, each issue in the report and recommendation to which he objects, or else the litigant forfeits the Court's de novo review of the issue. *Miller*, 50 F.3d at 380 (citation omitted) ("The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious.").

For unobjected portions of the R&R, "the advisory committee notes to Federal Rule of Civil Procedure 72(b) suggest that the Court still must 'satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Redmon v. Noel*, No. 1:21-cv-445, 2021 WL 4771259, at *1 (S.D. Ohio Oct. 13, 2021) (collecting cases).

## LAW AND ANALYSIS

For Ruggles to successfully challenge a state conviction in federal habeas, he "must show that 'law and justice require relief.'" *White v. Plappert*, 131 F.4th 465, 476 (6th Cir. 2025) (quoting *Brown v. Davenport*, 596 U.S. 118, 134 (2022) (in turn citing 28 U.S.C. § 2243)). As for the law prong, which is the only prong the Court addresses in this Opinion and Order, that showing is no easy task. As a state convict, Ruggles must overcome the Antiterrorism and Effective Death Penalty Act of 1996's (AEDPA) re-litigation bar. 28 U.S.C. § 2254(d). And to do that "a habeas petitioner like [Ruggles] must show the state court's last reasoned decision is either 'contrary to' or an 'unreasonable application of' clearly established Supreme Court precedent." *Id.*; *see also Williams v. Taylor*, 529 U.S. 362, 405–08 (2000) (explaining the independent meanings of 28 U.S.C. § 2254(d)(1)'s two operative phrases).

Aside from that deferential standard, Ruggles faces another hurdle on many of his claims. "For a federal court to reach the merits of a petitioner's claims, the petitioner must show he 'exhausted the remedies available in the courts of the State.'" *Rayner v. Mills*, 685 F.3d 631, 643 (6th Cir. 2012) (quoting 28 U.S.C. § 2254(b)(1)(A)). And "[i]f a petitioner has not exhausted his claims, but is now procedurally barred from doing so, he must show 'cause for the noncompliance' and 'actual prejudice resulting from the alleged constitutional violation,'" or show a miscarriage of justice— i.e., actual innocence. *Id.* (first quoting *Wainwright v. Sykes,* 433 U.S. 72, 84 (1977); and then citing *Murray v. Carrier,* 477 U.S. 478, 496 (1986)). This includes any claims that Ruggles attempted to raise, but that the state court found procedurally defaulted under an "independent and adequate state procedural rule." *Williams v. Bagley*, 380 F.3d 932, 966–67 (6th Cir. 2004).

**A.      Ruggles' Six Grounds for Relief.**

**1.      Ground One: Violation of the Presumption of Innocence.**

Ruggles claims that the following statements the trial court made to the jury during voir dire violated his "constitutional right to a presumption of innocence": (1) "it is difficult for the accused to prove a negative"; (2) "there are two sides to everything"; (3) "if you were the accused, you'd want your chance"; and (4) "the question is how is that addressed? You know, how are the two sides presented." (Doc. 1, #6 (internal quotation marks omitted)). Ruggles argues that the combination of these statements "gave the jury the impression that [he] was required to prove his innocence," in violation of his rights under the Due Process clause. (Doc. 11, #1418).

11

Ruggles previously raised this same claim on direct appeal, where the Twelfth District found it defaulted, because he had failed to make a contemporaneous objection at trial, and so reviewed it for plain error only, finding "no error, much less plain error." *Ruggles I*, 154 N.E.3d at 167–69.

In his habeas petition, Ruggles does not contest a potential default. Rather, he argues the Court should reach the merits of his claim because "[t]he 'fundamental miscarriage of justice' gateway" is open due to his innocence. (Doc. 11, #1417 (quoting *Williams*, 380 F.3d at 973)). The Magistrate Judge agrees that Ruggles has procedurally defaulted his claim, but finds his new evidence of actual innocence wanting. (Doc. 13, #1468, 1471). Beyond that, the Magistrate Judge recommends that even if the Court does reach the merits of the claim, the Court "should defer under 28 U.S.C. § 2254(d)(1) to the Twelfth District's reasonable application of the law." (*Id.* at #1471). Ruggles, for his part, objected only "to the finding that he did not produce enough evidence to show actual innocence and, therefore, avoid procedural default"— specifically citing the Tabor Report and London Report (further described below) as providing scientific exculpatory evidence. (Doc. 25, #1531–32). So the Court will review that finding de novo and the rest for clear error.

Starting with the unobjected portions of the R&R, the Court finds that there was no clear error. Ruggles did not object to the statements to the jury at trial as required by Ohio procedural rules, so the Twelfth District found that "he has waived all but plain error review." *Ruggles I*, 154 N.E.3d at 167. And as the Magistrate Judge correctly points out, (Doc. 13, #1468), a state appeals court's "plain-error review is not

considered a review on the merits, [so Ruggles] procedurally defaulted on this claim if no exception is applicable." *Jells v. Mitchell*, 538 F.3d 478, 511 (6th Cir. 2008); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012) (quoting *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006)) (holding that an Ohio state court's review for plain error based on "the 'firmly-established Ohio contemporaneous objection rule'" is an enforcement, not waiver, of procedural default). So the Court finds this claim procedurally defaulted. Additionally, the Court agrees with the Magistrate Judge that the Twelfth District's decision was reasonable under the AEDPA standard, as the statements that Ruggles points to did not misstate the burden of proof nor suggest that he had to prove his innocence.

Now the Court turns to the objected portion of the R&R—Ruggles' claim that he produced sufficient evidence to show his actual innocence, thus allowing him to escape the procedural default. (Doc. 25, #1531). To do so, Ruggles must "persuade[] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). Ruggles originally attached eighteen[3] exhibits to his state Petition for Post-Conviction Relief, (*see* Doc. 4, #389–461), and he now points to two of them here that he believes provide

---

[3] While Ruggles references eighteen exhibits throughout the record, (*see, e.g.*, Doc. 4, #524), by the Court's count, the state record only contains fourteen.

13

"scientific exculpatory evidence"—the Tabor report and the London report.[4] (Doc. 25, #1531–32).

Because Ruggles objects on the basis of these two reports, the Magistrate Judge provides a more fulsome analysis of them in the Supplemental R&R and concludes that they do not establish actual innocence. (Doc. 27, #1544–49). As for the Tabor report, the Magistrate Judge finds that "it is not reliable new scientific evidence of innocence" under *Daubert* because Tabor "provides no scientific authority for the proposition that it is scientifically appropriate to give a clinical opinion based only on the review of another clinician's results." (*Id.* at #1548). And while the initial R&R calls the other report—the London report—the "most substantial" of the new pieces of evidence and notes that it could have possibly undermined the victims' credibility if offered at trial, the Magistrate Judge ultimately finds that undermining the credibility of witnesses is insufficient to establish the actual innocence required to overcome a procedural default. (Doc. 13, #1471 (citing *Hubbard v. Rewerts,* 98 F.4th 736, 743 (6th Cir. 2024) (discussing the distinction between exonerating and impeachment evidence))). The Supplemental R&R reiterates that both reports are not sufficient to prove actual innocence. (Doc. 27, #1549).

So, the Court's analysis focuses on those two reports. As to the first, Dr. Pamela Tabor is a forensic nurse who reviewed Ruggles' case, including the medical reports,

---

[4] Ruggles references his actual innocence as demonstrated by these two reports throughout his Petition, as the "actual innocence gateway" would apply to any of his claims that he has procedurally defaulted. The Court only addresses it on the merits in this section, but the same analysis applies throughout.

14

and concluded that "there is no medical evidence specific to sexual abuse to sustain findings of sexual abuse." (Doc. 4, #441). Although she did not conduct any of her own examinations, Tabor's "cursory review" of the medical history led her to the professional opinion that it did not contain the physical findings she would expect if the alleged sexual abuse occurred. (*Id.* at #442). According to Ruggles, this evidence "shows that it was not possible for Petitioner to have had sexual relations with his daughter every time he had seen his daughter for six years without leaving evidence that would be found on an exam." (Doc. 25, #1532).

Dr. Kamala London is a developmental psychologist who specializes in "forensic memory and suggestibility for childhood events." (Doc. 4, #402). Like Dr. Tabor, she was asked to review the case records. (*Id.*). Dr. London's report is long, but Ruggles cites one section in particular to make his actual innocence argument: London's "scientific framework" on the possibilities for why the victims did not disclose the sexual abuse until many years later—in particular, why they did not disclose the abuse in a 2012 interview (or subsequent counselling) in which they reported other mental and emotional abuse. (*Id.* at #417; Doc. 25, #1532). Dr. London also would have offered at trial her expert opinion that, contrary to popular belief, most children disclose sexual abuse when asked about it—i.e., nondisclosure is *not* standard. (Doc. 4, #419; Doc. 25, #1532).

After reviewing the reports de novo, the Court agrees with the Magistrate Judge and adopts the recommendations. Both pieces of "scientific" evidence that Ruggles cites go towards challenging the state's evidence, rather than demonstrating

15

his innocence. True, if it "w[ere] *not possible* for Petitioner to have sexual relations with his daughter" without the medical records revealing evidence of it, *and* the records contained no such evidence, *and* the Tabor report proved both of those items to the point that no reasonable jury could convict Ruggles, that might support an actual innocence claim. (Doc. 25, #1532 (emphasis added)). But the Court finds that the report falls far below establishing that. For one, the report itself does not conclude that its findings mean that abuse definitively did not occur. Rather, the report merely concluded that there was no physical evidence of said abuse. (Doc. 4, #441–42). While that may be a narrow distinction, it is important here. That is because, in the Court's view, the persuasive value of a report prepared by someone who did not examine the victims themselves, and who only evaluates the medical records after the fact and contests the findings of prior medical personnel is limited at best. So that makes it important not to over-read any of the reported conclusions. As for the London report, the Court agrees with the Magistrate Judge's assessment that it only goes towards the credibility of the victims' testimony and cannot by itself prove Ruggles' innocence. So the Court finds that this new evidence does not rise to the level required to overcome procedural default. *See Schlup*, 513 U.S. at 329. Accordingly, Ruggles is procedurally barred from pursuing this claim at the federal level. The Court adopts the R&R (Doc. 13) and Supplemental R&R (Doc. 27) and dismisses Ground One with prejudice.

16

2.     **Ground Two: Prosecutorial Misconduct by Misstating the Law During Voir Dire.**

In his second ground, Ruggles claims that the state committed "prosecutorial misconduct" during voir dire by telling the jury that the "typical sexual abuser was a family member or someone close to the family," and by explaining to the jury that "the evidence of one witness, if believed was enough to convict." (Doc. 1, #8). Ruggles previously advanced this claim on direct appeal where, like Ground One, the state appeals court found that he had waived review on the merits because he had not objected to the statements at trial and so reviewed for plain error only.[5] *Ruggles I*, 154 N.E.3d at 169. Accordingly, the Magistrate Judge finds that Ruggles procedurally defaulted Ground Two for the same reason as Ground One and recommends dismissal with prejudice. (Doc. 13, #1472). Ruggles does not object to that finding (he in fact concedes the point), (Doc. 11, #1420; Doc. 25, #1533), and so the Court, finding no clear error, adopts the R&R insomuch as it recommends dismissal with prejudice.

3.     **Ground Three: Denial of the Right to Confront Witnesses.**

Ruggles' next claim mixes (and did throughout his direct appeal) two different arguments based on the trial court denying his motion requesting the state to produce the 2012 in-camera interviews of S.D. and A.D.: (1) a violation of his Sixth Amendment confrontation rights; and (2) a *Brady* violation (so named for *Brady v.*

---

[5] The parties also spend considerable space arguing over whether Ruggles properly exhausted this claim up to the Ohio Supreme Court. (Doc. 5, #1322–23; Doc. 11, #1419–20; Doc. 13, #1472; Doc. 25, #1532–33). This claim is already defaulted for another reason, so the Court does not analyze that question here. But as the Court's analysis for Ground Five makes clear, Ground Two claim is defaulted for that reason as well, *see* infra Law and Analysis A.5.

*Maryland,* 373 U.S. 83 (1963)). (Doc. 1, #18; Doc. 11, #1424). Ruggles now concedes that the "Confrontation Clause portion of this claim" is defaulted because he failed to exhaust it up to the Ohio Supreme Court, as he only argued his *Brady* claim on that appeal. (Doc. 11, #1423). The R&R agrees that he has procedurally defaulted his Confrontation Clause claim. (Doc. 13, #1473). But then it goes a step further and finds that he also procedurally defaulted his *Brady* claim by failing to argue it in the Ohio court of appeals. (*Id.*). Aside from conceding that his Confrontation Clause claim is defaulted, Ruggles offers no objections to the R&R's findings on Ground Three, including his *Brady* claim. So any review is solely for clear error.

Taking the two theories in order, the Court begins by agreeing that Ruggles defaulted any claim based on the Confrontation Clause. So the Court adopts the R&R as to that point.

But that isn't the case as to the alleged *Brady* violation. True, the "doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Williams*, 380 F.3d at 969 (quoting *Wong v. Money,* 142 F.3d 313, 322 (6th Cir.1998)). But applying that standard here, the Court disagrees with the R&R and finds that Ruggles did press a *Brady* claim in the trial court and on both appeals. (Doc. 13, #1473). As the Amended Traverse points out, Ruggles not only argued a due process discovery violation in all three courts, (Doc. 11, #1424), he also directly cited *Brady*, (Doc. 4, #137). Moreover,

18

the Twelfth District ruled on that argument.[6] *Ruggles I*, 154 N.E.3d at 164. So, the Court finds that Ruggles fairly presented his *Brady* claim to each level of the state courts.

But that only gets Ruggles so far. Reviewing the *Brady* claim on the merits, the Court finds that it fails to meet AEDPA's exacting standard of an "unreasonable application of" clearly established law. *See* 28 U.S.C. § 2254(d)(1). Under *Brady*, a due process violation occurs when favorable evidence that is *material* to guilt is withheld from a defendant. 373 U.S. at 87. The Twelfth District reasonably applied that standard when it found that "the requested 2012 in camera interview record is not material." *Ruggles I*, 154 N.E.3d at 167. Because the victims on cross-examination had already testified that those 2012 interviews contained no discussion of Ruggles committing sexual offenses, those interviews "would, at best, provide evidence consistent with [that] testimony." *Id.* Ruggles in fact concedes that the evidence would have been merely cumulative, only arguing that any additional "impeachment evidence" such as this can be important in a "he said/she said type of case"—a far cry

---

[6] The Twelfth District largely drew its analysis from *Pennsylvania v. Ritchie*, 480 U.S. 39, 51–58 (1987), which discusses both the Confrontation Clause and the government's discovery obligations under *Brady*. The Twelfth District took the same approach, analyzing Ruggles' claim under both theories. So, while the Twelfth District did not itself cite to *Brady*, it did discuss Ruggles' "right under the Due Process Clause of the Fourteenth Amendment to discover the identity of witnesses or to require the government to produce exculpatory evidence." *Ruggles I*, 154 N.E.3d at 164. Additionally, Ruggles' brief to the Twelfth District raised the *Brady* argument, despite only citing the Confrontation Clause in the heading. (Doc. 4, #136–37).

19

from demonstrating that the Twelfth District unreasonably applied the law. (Doc. 11, #1425–26). Accordingly, the Court dismisses Ground Three with prejudice.

### 4. Ground Four: Violation of Ruggles' Sixth Amendment Right to Testify.

Ruggles' fourth ground argues that the state denied his right to testify at trial. (Doc. 1, #11). According to him, "[d]uring his sentencing, [he] clearly stated his desire to testify at trial. [But] [t]he trial court did not hold a hearing to inquire rather [sic] Mr. Ruggles['] sixth amendment right to testify had been violated." (*Id.*). Ruggles previously brought this claim on direct appeal where the state appellate court held that the claim failed on the merits.[7] *Ruggles I*, 154 N.E.3d at 175.

The Magistrate Judge evaluated this claim on the merits and found the state appellate decision to be reasonable both because the state did nothing to prevent Ruggles from testifying and because Ruggles' statement during sentencing could reasonably be read as an expression of regret (which is how the state appellate court read it), rather than a demand or request. (Doc. 13, #1477–78). Separately, the R&R finds this claim defaulted because Ruggles did not appeal it to the Ohio Supreme Court. (*Id.* at #1478). A point Ruggles concedes. (Doc. 25, #1533). So once again, the Court reviews for clear error.

To start, the Court clarifies that while Ruggles abandoned his *post-conviction* ineffective assistance of counsel claim based on his failure to testify, (*see* Doc. 4, #623–

---

[7] Ruggles also brought a claim during his state post-conviction proceedings based on his failure to testify. *See Ruggles II*, 2022-Ohio-1804, ¶¶ 61–68. There, it was part of his cumulative ineffective of assistance of counsel claim but likewise dismissed on the merits. *Id.*

632), he did properly exhaust his *direct appeal* claim, as it was his Third Proposition of Law when appealing to the Ohio Supreme Court, (*see id.* at #236). But the Court finds no clear error in the Magistrate Judge's conclusion that this claim fails on the merits. (Doc. 13, #1477–78). As the Twelfth District originally found, "[t]here is nothing in the trial transcript that signals [Ruggles] wanted to testify at trial." *Ruggles I*, 154 N.E.3d at 175. Accordingly, Ground Four is dismissed with prejudice.

### 5.  Ground Five: Conviction Based on Legally Insufficient Evidence and Against the Manifest Weight of the Evidence.

Ruggles' Ground Five argues that his "convictions were based on legally insufficient evidence and against the manifest weight of the evidence"—denying him "due process of the law, as guaranteed by the Fourteenth Amendment to the Constitution of the United States." (Doc. 1, #18). Ruggles takes issue with the combination of the lack of physical evidence and the inconsistency of the victims' testimony throughout interviews and at trial. (*Id.* at #18–19). Ruggles previously raised this claim on direct appeal, and the Twelfth District dismissed it on the merits. *Ruggles I*, 154 N.E.3d at 175–78.

The Magistrate Judge begins by finding that while a "weight of the evidence" claim is not cognizable in habeas corpus, an insufficient evidence claim is. (Doc. 13, #1478). But the Magistrate Judge finds that Ruggles' insufficient evidence claim fails because both victims testified as to every element of the charges. (*Id.* at #1486). Separately, the Magistrate Judge finds the claim procedurally defaulted because Ruggles mentioned it only in his statement arguing that the Supreme Court take up the appeal—meaning it was not fairly and fully presented to the Ohio Supreme Court.

21

(*Id.* at #1485). Ruggles objects only to the finding that his claim was not fully and fairly presented to the Ohio Supreme Court, so the Court reviews that finding de novo. (Doc. 25, #1534).

First, the Court finds this claim to be procedurally defaulted because Ruggles failed to present it to the Ohio Supreme Court. "Fair presentation requires that the state courts be given the opportunity to see both the factual and legal basis for each claim." *Wagner v. Smith*, 581 F.3d 410, 414–15 (6th Cir. 2009) (citations omitted). Ruggles stated the following (and mentioned the claim no further) in his explanation for why the Ohio Supreme Court should grant his appeal: "[t]he evidence used to convict Mr. Ruggles was insufficient … [t]he basis for this assignment of error is the fact that there was extensive inconsistent evidence produced at trial but no direct evidence, and Mr. Ruggles' guilt was not established beyond a reasonable doubt." (Doc. 4, #230). While this could arguably be a presentation of the *legal* basis of his claim (despite Ruggles not actually including it in the body of his argument), Ruggles failed to present the *factual* basis of the claim. As Ruggles explains in his Amended Traverse, this claim is based on the supposed "inconsistent testimony of A.D. and S.D." because "they gave multiple different versions of the alleged sexual abuse" and "[t]he conviction was based entirely on their testimony." (Doc. 11, #1429–30). Those facts were not presented to the Ohio Supreme Court. So that constitutes a procedural default.

In any event, Ruggles does not object to the Magistrate Judge's finding that his insufficient evidence claim fails on the merits. And the Court finds no clear error

there. The Court agrees that the witnesses testified to each required element; whether those witnesses were credible is best left up to the jury that tried this case. So the Court adopts the R&R and Supplemental R&R and dismisses Ground Five with prejudice.

### 6. Ground Six: Ineffective Assistance of Counsel.

In his Sixth Ground for relief, Ruggles makes eleven claims of ineffective assistance of his trial counsel and adds a twelfth "cumulative" claim. (Doc. 1, #19–20). Ineffective assistance of counsel claims must satisfy the Supreme Court's two-pronged test set out in *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984) to succeed: (1) the "counsel's representation [must fall] below an objective standard of reasonableness" and (2) that "deficient performance [must] prejudice[] the defense." But remember, under AEDPA, Ruggles must also demonstrate that the state court either applied the wrong law or, using the correct standard, ruled unreasonably. *White*, 131 F.4th at 476. Here, Ruggles only argues the latter, so he must demonstrate that the state court's application of *Strickland* "reach[ed] a bottom-line judgment that's 'so obviously wrong' that no fair-minded jurist could possibly agree." *Id.* at 477 (quoting *Shinn v. Kayer*, 592 U.S. 111, 118 (2020)). In sum, Ruggles "must overcome two layers of deference: deference to the defense attorney and deference to the state court." *Id.* at 478 (citations omitted).

While Ruggles has had several attorneys at this point, Ground Six alleges ineffective assistance by his *original* trial counsel. He first argued his trial counsel's deficient performance on direct appeal, *see Ruggles I*, 154 N.E. at 171–74, then again

23

during his state post-conviction proceedings, *see Ruggles II*, 2022-Ohio-1804, ¶¶ 26–68. His twelve claims here are largely a combination of those brought in his two previous attempts.[8] The Court addresses each.

*i)     Trial counsel's failure to object to the victims' testimony regarding their medical and psychological conditions*

Ruggles first argues that certain portions of the victims' testimony—statements identifying their medical and psychological conditions and concluding that those conditions were caused by him—violated the Ohio rule of evidence requirement that "competent expert medical testimony [be offered] to establish causation between an injury and a medical condition." (Doc. 11, #1432). And based on that, he claims that his trial counsel was ineffective for failing to object on those grounds, prejudicing him. (*Id.* at #1435). Ruggles previously raised this claim on direct appeal to the Twelfth District, where the court rejected it on the merits because he failed to prove either prong of *Strickland*. *Ruggles I*, 154 N.E.3d at 172.

The Magistrate Judge first finds this claim defaulted because Ruggles did not raise it in the Ohio Supreme Court. (Doc. 13, #1490). Like Grounds Two and Five, he only included this argument in the portion of his brief asking the Supreme Court to hear the case. (*See* Doc. 4, #230). Separately, the Magistrate Judge recommends dismissal on the merits because the Twelfth District found that if the objection had been made at trial, it would have been overruled, a question of Ohio law that a federal

---

[8] Ruggles also raised some similar claims—based on his *appellate counsel's* inadequate performance—in his Ohio Rules of Appellate Procedure 26(B) application to reopen his appeal. (*See* Doc. 4, #321).

24

habeas court may not reexamine. (Doc. 13, #1490 (citing *Railey v. Webb*, 540 F.3d 393 (6th Cir. 2008))). Ruggles objects once again by claiming his actual innocence. (Doc. 25, #1534–35).

The Court, finding no error in the Magistrate Judge's finding of a procedural default,[9] and having already ruled on merits of Ruggles' actual innocence argument, *see* infra Law & Analysis, Part A.1, overrules Ruggles' objection. The Court adopts the R&R and Supplemental R&R and dismisses this claim with prejudice.

### ii) *Trial counsel's failure to object to the State's evidence of prior bad acts*

Ruggles next argues that the victims' testimony about "UTI checks" and other "alleged incidents of mental, emotional, and spiritual abuse," done by Ruggles constituted impermissible bad act evidence and that his attorney's failure to object prejudiced him. (Doc. 1, #21; Doc. 11, #1438). Ruggles previously raised this claim on direct appeal to the Twelfth District, where it was rejected on the merits. *Ruggles I*, 154 N.E.3d at 173–74.

The Magistrate Judge recommends dismissal for the same reasons as the previous claim—a federal court cannot reexamine the Twelfth District's holding on an issue of state law and Ruggles defaulted the claim by not raising it to the Supreme Court. (Doc. 13, #1491–92). Ruggles does not object to either finding, so, the Court finds no clear error and adopts the R&R and dismisses this claim with prejudice.

---

[9] The Court already ruled on that question de novo, *see* infra Law & Analysis, Part A.5. The reference here is even less explicit, failing to present any of the factual basis for the claim. (Doc. 4, #230 ("Trial counsel failed to object to numerous procedural errors as well as the admission of inadmissible evidence.")).

*iii)*   *Trial counsel's failure to object to Jennifer Knisley's testimony improperly vouching for the credibility of the alleged victims.*

Ruggles argues that the State's witness, Jennifer Knisley, improperly vouched for the credibility of the victims in violation of Ohio rules of evidence, prejudicing him. (Doc. 11, #1439). Ruggles raised this claim on direct appeal and the Twelfth District dismissed it on the merits because it found that the witness testified in accord with Ohio state law. *Ruggles I*, 154 N.E.3d at 174 (discussing *State v. Stowers*, 690 N.E.2d 881 (1998)).

The Magistrate Judge recommends dismissal for the same reasons as the previous two claims, (Doc. 13, #1493), and Ruggles concedes that this claim is defaulted, (Doc. 25, #1536). Accordingly, the Court adopts the R&R and dismisses this claim with prejudice.

*iv)*   *Trial counsel's failure to object to the State's motion for joinder and the court's consolidation of the two cases*

This matter started as two separate cases which were then consolidated for trial. Ruggles argues that consolidation was impermissible because the abuse of the two victims never occurred contemporaneously. (Doc. 11, #1440). Thus, the joinder, and his attorney's failure to object to it, improperly prejudiced him as it tended to "show a propensity to commit crime." (*Id.*). Ruggles did not raise this claim on direct appeal but did argue it in his Ohio Rules of Appellate Procedure 26(B) application to reopen his appeal, arguing that his appellate counsel was ineffective for failing to raise the issue on direct appeal. (Doc. 4, #323–25). The Twelfth District denied that claim on the merits. (*Id.* at #348). Ruggles also argued this issue in his state post-conviction proceedings as part of his cumulative ineffective assistance of counsel

26

claim. *Ruggles II*, 2022-Ohio-1804, ¶¶ 74–75. There, the Twelfth District found the argument both barred by res judicata for not being raised on direct appeal and failing on the merits because Ruggles offered no evidence that opposing the joinder would have changed the outcome of his case. *Id.*

The Magistrate Judge finds this claim procedurally defaulted because Ruggles did not appeal the denial of his Rule 26(B) motion to the Ohio Supreme Court. (Doc. 13, #1494). Ruggles objects to the default, but does not explain why, and again reminds the Court of his actual innocence argument. (Doc. 25, #1536).

Despite the weak objection, the Court reviews de novo but still dismisses the claim after offering a slight correction. There are two separate ineffective assistance of counsel claims that Ruggles has raised at different points in these proceedings—one based on his trial counsel's failure to raise a contemporaneous objection and another on his appellate counsel's failure to raise that trial counsel's deficient performance on this issue . Both are defaulted. As to the first—which is the claim Ruggles raises in this petition—the Twelfth District (when ruling on his state post-conviction petition) found it barred by res judicata, because it was not raised on direct appeal and did not involve evidence outside the record. *Ruggles II*, 2022-Ohio-1804, ¶ 74. So by virtue of being barred by an independent state procedural rule, that claim is defaulted. As to the second[10]—which Ruggles does not appear to be advancing here—it is defaulted for the reason the Magistrate Judge finds: he raised it in his

---

[10] This second claim, if successful, could have provided an avenue for Ruggles to escape his default for failing to bring this claim on direct appeal. That avenue is now closed, as Ruggles defaulted on that claim as well.

Rule 26(B) motion, but he did not appeal the court's denial of that motion to the Ohio Supreme Court. So the Court adopts the R&R and Supplemental R&R insomuch as they recommend dismissing this claim, and dismisses this claim with prejudice.

v)  *Trial counsel's failure to subpoena or call as a witness Dr. Lori Vavul Roediger after promising the jury that she would testify during his opening statement*

The State did not call its medical expert, Dr. Roediger, to the stand during trial despite her appearing on the witness list. (Doc. 1, #22). Because of that, Ruggles argues that his trial counsel was ineffective for failing to call Dr. Roediger himself because he had promised the jury in his opening statement that he would cross-examine her. (Doc. 11, #1440). Ruggles made this same argument in his state post-conviction proceedings, which the Twelfth District rejected on the merits. *Ruggles II*, 2022-Ohio-1804, ¶ 35.

The Magistrate Judge recommends dismissal, finding the Twelfth District's opinion to be a reasonable application of the law as "*Strickland* itself forbids second guessing a defense attorney's trial strategy." (Doc. 13, #1496). Ruggles objects, arguing that his counsel's trial strategy consisted of counsel doing "nothing to prepare for cross-examination"—including not discussing the matter with an expert—and that he was prejudiced by his trial counsel failing to present to the jury that the medical findings did "not indicate that an assault took place." (Doc. 25, #1537). The Magistrate Judge's Supplemental Report (Doc. 27) and Ruggles' objections to it (Doc. 28) repeat those positions. So the Court reviews this claim de novo.

The Court agrees with the R&R; the Twelfth District decision was not an unreasonable application of *Strickland*. Trial counsel's strategy was not "promis[ing]

28

this witness" then failing to deliver as Ruggles presents it. (Doc. 11, #1441). Instead, in his opening statement, trial counsel characterized what Dr. Roediger's testimony would be and asked the jury to concentrate on the lack of physical evidence she would be presenting. *See Ruggles II*, 2022-Ohio-1804, ¶¶ 33–36. Then, when the State did not call her as a witness, he "strategically questioned the state's motive in declining to present the doctor's testimony." *Id.* Ruggles fails to articulate how the state court dismissing his claim on these grounds was unreasonable. The Court adopts the R&R and Supplemental R&R and dismisses this claim with prejudice.

*vi)*    *Trial counsel's failure to object to the State's witness, Jennifer Knisley, being certified as an expert*

Ruggles next argues that social worker Jennifer Knisley was certified as an expert witness and provided expert testimony without having met the threshold requirements under the Ohio Rules of Evidence. (Doc. 1, #22). He claims "[t]he State utilized Ms. Knisley as an expert in delayed disclosure" when that expertise was not established at trial. (Doc. 11, #1442). Ruggles did not make this argument on direct appeal but did argue that his appellate counsel was ineffective for failing to raise it on direct appeal in his Ohio Rules of Appellate Procedure 26(B) application. (Doc. 4, #327–29).

The Magistrate Judge finds that Ruggles procedurally defaulted this claim, both by failing to raise it on direct appeal and by failing to appeal the denial of his 26(B) application to the Ohio Supreme Court. (Doc. 13, #1498). Ruggles makes no objection, conceding the default. (Doc. 25, #1538). So the Court, finding no clear error, adopts the R&R and dismisses this claim with prejudice.

vii)   *Trial counsel's failure to interview, investigate, or subpoena a medical expert, and*

viii)  *Trial counsel's failure to interview, investigate, or subpoena a psychological expert*

The parties address these two claims together. Ruggles argues that his trial counsel was ineffective in failing to retain or interview medical and psychological experts, despite Ruggles' requests and payments for each. (Doc. 11, #1443). The proposed experts he now points to, Dr. London and Dr. Tabor, have been discussed extensively in this Opinion. (*Id.*). Ruggles previously made these claims during his post-conviction proceedings, where the court dismissed them on the merits. *See Ruggles II*, 2022-Ohio-1804, ¶¶ 27–32, 38–43.

The Magistrate Judge finds that Ruggles "provides no basis for finding that the Twelfth District did not reasonably apply *Strickland* by finding the complained-of omissions by [trial counsel] were appropriate trial strategy" and recommends dismissal on the merits. (Doc. 13, #1501). Ruggles objects, highlighting that he gave his trial attorney ten thousand dollars to hire a medical expert. (Doc. 25, #1538). The Supplemental R&R addresses this point, stating that the Magistrate Judge is unaware of any application of *Strickland* "hold[ing] that it is ineffective assistance of trial counsel to fail to call a witness because counsel has been given the witness's expected fee." (Doc. 27, #1554–55). Ruggles objects again, reiterating that he paid money, is unsure what happened to that money, was told experts would be at trial by his attorney, and then no experts showed up. (Doc. 28, #1564). So the Court reviews this claim on the merits de novo.

30

The Twelfth District's opinion is a reasonable application of *Strickland*. As to the medical expert, the court reasonably denied the claim because the factual record was insufficient to show that counsel failed to investigate or consult with a medical expert. *Ruggles II*, 2022-Ohio-1804, ¶ 30. Further, Ruggles wanted to call Dr. Tabor to testify as to the lack of physical evidence, but physical evidence is unnecessary to support a sexual offense, so the lack of it did not exculpate Ruggles. *Id.* ¶ 31. And finally, Ruggles was not prejudiced. Dr. Tabor's testimony would have been merely cumulative as the jury was already aware of the lack of physical evidence in the case. *Id.* ¶ 32. As to the psychological expert, again, Ruggles failed to show that counsel neglected to investigate or counsel with a psychologist. *Id.* ¶ 39. And while Ruggles hoped that Dr. London's testimony would demonstrate the changing nature of the victim's stories, counsel made the same point through his cross-examination of the victims. *Id.* ¶ 39, 41.

Ruggles' argument does not attack these grounds for the court's ruling, focusing instead on his issues with his trial counsel's performance, and how that performance prejudiced him. (Doc. 11, #1443–46). But without Ruggles demonstrating that the Twelfth District ruled unreasonably, the Court cannot sustain his claim—no matter how upset he may be with his counsel's performance. Perhaps, if the record clearly indicated deficient performance by his counsel and the Twelfth District ignored that, the opinion might be an "obviously wrong" judgment. But that is not what the state appeals court did here. It ruled against Ruggles' claims on the merits for the reasons stated above and this Court finds that holding to be

31

reasonable. Separately, the Court analyzed the affidavits of the two experts under its Ground One analysis and found them lacking. *See* supra Law & Analysis, Part A.1. So the Court is not convinced that had trial counsel used these experts the result would have been different, suggesting Ruggles was not prejudiced by any inaction. Accordingly, the Court adopts the R&R and Supplemental R&R and dismisses these claims on the merits with prejudice.

*ix)     Trial counsel's failure to obtain the victims counseling and medical records*

Ruggles also argues that his trial counsel was ineffective for failing to obtain various records of the victims: 2012 counseling records; 2006-2012 Children's Hospital records; 2017-2019 counseling records; and July 2012 records from a visit to the Family Advocacy Center. (Doc. 1, #22–23). According to him, these records could have served as "pertinent and damaging impeachment evidence" to attack the victims' testimonies, which was the only evidence against him. (Doc. 11, #1448). Ruggles made this claim during his post-conviction proceedings, where the Twelfth District dismissed it on the merits. *See Ruggles II*, 2022-Ohio-1804, ¶¶ 44–47.

The Magistrate Judge recommends dismissal based on Ruggles' failure to engage with the state court's decision; both its factual findings as to his trial counsel's efforts and its legal conclusion that the decision not to submit these records was an appropriate strategic decision. (Doc. 13, #1503). Ruggles objects, arguing that because the "records not sought made it difficult for counsel to attack motive and bias" his claim should succeed on the merits. (Doc. 25, #1539). In the Supplemental R&R, the Magistrate Judge recommends the objection be overruled because Ruggles once again ignores the factual finding by the Twelfth District that the claim "was speculative,

32

both as to the content of the documents and counsel's effort to obtain them." (Doc. 27, #1555). Ruggles reiterates the same objection. (Doc. 28, #1565).

Reviewing de novo, the Court dismisses the claim. Once again, Ruggles fails to engage with the reasoning of the state court. For example, the Twelfth District found that "Ruggles has offered no cogent evidence suggesting" that his trial counsel's performance in obtaining the records was deficient, and Ruggles does not offer any new facts here in that regard, opining only on how he was harmed by the records not being used. *Ruggles II*, 2022-Ohio-1804, ¶¶ 44–47; (Doc. 11, #1446–48). Nor has Ruggles convinced this Court that the records would have had anything beyond a "purely speculative" effect on his trial. *Ruggles II*, 2022-Ohio-1804, ¶ 46. While his objection claims they could be used to "attack motive and bias" of the victims' mother, the Court is unconvinced that this would have a material effect, as she was not the witness who testified about the crimes, the victims did. (Doc. 25, #1539). So the Court adopts the R&R and Supplemental R&R and dismisses this claim.

x) *Trial counsel's failure to present available impeachment evidence or provide a motive bias*

Considerably overlapping with the previous claim, Ruggles claims that his trial counsel's failure to use "impeachment evidence"—which is what he calls the prior, allegedly false, allegations of sexual abuse by one of the victims; the adoption of the victims by their stepfather; a potential cross-examination of one of the victims on an available 2012 Guardian ad Litem report; and a potential interview of Ruggles' parents—prejudiced him. (Doc. 1, #23). Ruggles made this claim on appeal during his

post-conviction proceedings, where it failed on the merits. *See Ruggles II*, 2022-Ohio-1804, ¶¶ 48–54.

The Magistrate Judge recommends dismissal because Ruggles' "argument is unpersuasive in that it does not suggest why omission of all this material was not a wise strategic decision" by trial counsel. (Doc. 13, #1505). Ruggles' objects, suggesting that the delayed disclosure of the abuse by the victims supports his theory that the mother of the victims instigated these accusations in response to a dispute over the victims' adoption by their stepfather, and so his trial counsel should have presented it. (Doc. 25, #1540).

Reviewing de novo, the Court finds that this claim fails. Ruggles does not grapple with the reasoning of the appellate court and only reiterates why he thinks the evidence would have been helpful. (Doc. 11, #1446–48). And the "bias and motive" he suggests in his objection are not convincing, the jury was already aware of the delayed disclosure of the abuse and the victim's justification for it; Ruggles offers no evidence, then or now, linking the contested adoption to the reported abuse. So this Court adopts the R&R, overrules Ruggles' objections, and dismisses this claim with prejudice.

*xi)*    *Trial counsel's failure to investigate, interview, or subpoena other impeachment witnesses*

Sticking with the impeachment theme, Ruggles argues that when he provided trial counsel with a list of eighteen potential witnesses, and trial counsel only interviewed two of them, calling only one of them to the stand, it was ineffective assistance of counsel because "[m]any of the requested witnesses would have been

34

able to provide impeachment evidence." (Doc. 1, #23). When Ruggles brought this claim as part of his state post-conviction proceedings he attached various affidavits from the potential witnesses, as well as his email correspondence with trial counsel. (*Id.*); *Ruggles II*, 2022-Ohio-1804, ¶ 55. Ruggles now claims that these witnesses would have provided the following evidence to discredit the testimony of the victims: (1) testimony from Vanessa Burgan about Janel Ruggles' work schedule that would have shown that Janel was home during the alleged abuse, contradicting the victims' testimony; (2) testimony from Chad Frank regarding false allegations of sexual abuse that S.D. made towards him; (3) testimony from Gwendolyn Ruggles, Ruggles' mother, about the periods and conditions in which Ruggles lived with her, testimony which would contradict "the trial testimony as to the dates during which Mr. Ruggles lived in particular residences"; (4) testimony from Timothy Kilpatrick, who S.D. claimed was present for two instances of the sexual abuse, that he never witnessed any abuse; and (5) testimony from Janel Ruggles, who did testify at trial but was not prepared by his trial counsel and only testified briefly, about allegations for which she had direct knowledge that contradicted the trial testimony of S.D. (Doc. 11, #1448–49).

The Magistrate Judge finds that Ruggles fails to rebut the Twelfth District's finding that omitting these witnesses was sound trial strategy by his counsel, as Ruggles merely repeats the proposed evidence rather than explain why it was not, as the state court found, simply cumulative. (Doc. 13, #1507). Ruggles objects, arguing only that "[t]rial counsel's failure to interview, investigate, and subpoena any of the

35

lay witnesses provided by Mr. Ruggles, other than his wife, allowed the credibility of the complaining witnesses to remain unchallenged." (Doc. 25, #1541). In his Supplemental Report, the Magistrate Judge finds this to be a mere assertion without any argument grounded in *Strickland*. (Doc. 27, #1556). Ruggles repeats the same objection. (Doc. 28, #1566).

Reviewing de novo, the Court finds that this claim fails on the merits. Again, review at this stage is highly deferential, both to the trial counsel and to the state court's decision. Ruggles has already brought this identical claim, making the same arguments, in his state post-conviction proceedings. (*See* Doc. 4, #379–82). But here, he does not engage with the Twelfth District's decision adjudicating that claim at all, let alone demonstrate how that court unreasonably applied *Strickland*. *See Ruggles II*, 2022-Ohio-1804, ¶¶ 55–59. For instance, most of the evidence Ruggles was seeking to impeach with—including four of the five witnesses he discusses in this petition— is simply additional testimony from various relatives and individuals that they did not witness the abuse. The Twelfth District found such evidence cumulative and unlikely to change the outcome of Ruggles' case. *Id.* ¶ 57. But Ruggles does not explain why that reasoning is wrong, or inconsistent with *Strickland*, or contrary to any other part of the law. That said, the potential testimony of Chad Frank is different, in that it could serve to potentially impeach the testimony of the one of the victims. But the appellate court found that Ruggles' trial counsel made reasonable, non-deficient efforts to obtain those records. *Id.* ¶ 49. And Ruggles does not explain why that characterization was wrong. So the Court adopts the R&R and

Supplemental R&R, overrules Ruggles' objections, and dismisses this claim with prejudice.

### xii) *Trial counsel's cumulative errors, as described above, prejudiced Ruggles*

Finally, Ruggles claims that all the errors so far described, when added together, prejudiced him. (Doc. 1, #20). He reiterates how his trial counsel's failures affected his case and claims that his trial counsel even remarked about his lack of preparation to Ruggles. (Doc. 11, #1451–52). Ruggles brought a similar claim in his initial state post-conviction petition, focused on the denial of his right to testify, his counsel's failure to prepare for trial, and his failure to object to the joinder. (*See* Doc. 4, #381–85). The Twelfth District analyzed each of those individually and found them without merit. *Ruggles II*, 2022-Ohio-1804, ¶¶ 60–76. Here, while referencing all his other claims, Ruggles focuses on his trial counsel's failures to object at trial and to adequately prepare. (Doc. 11, #1451–52).

The Magistrate Judge finds that, post-AEDPA, cumulative error claims are not cognizable. (Doc. 13, #1508 (quoting *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011))). So, he recommends dismissal on that ground. Ruggles does not object. Accordingly, finding no clear error, the Court adopts the R&R and dismisses this final claim with prejudice.

### B. Certificate of Appealability.

Although the Court dismisses all of Ruggles' claims with prejudice, a final wrinkle remains. AEDPA imposes conditions before a court of appeals reviews a district court's denial of habeas relief. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

37

First, petitioners must seek and obtain a certificate of appealability. *Id.* Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." When a district court rejects a habeas claim on the merits, as here, this "substantial showing" requires the petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Against that backdrop, the Magistrate Judge recommends that, because no reasonable jurists would disagree with the dismissal of the Petition with prejudice, the Court should deny Ruggles a certificate of appealability. Separately, he recommends the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed in forma pauperis.

The Court agrees with the Magistrate Judge on both fronts. Accordingly, the Court denies a certificate of appealability and certifies that an appeal would be objectively frivolous.

## CONCLUSION

For the reasons stated above, the Court **OVERRULES** Ruggles' Objections to the R&R and Supplemental R&R (Docs. 25, 28) and **ADOPTS** the R&R (Docs. 13), except where it has been modified by the Supplemental R&R (Docs. 27), which the Court also **ADOPTS**. Accordingly, the Court **DISMISSES WITH PREJUDICE** Ruggles' Habeas Petition (Doc. 1). Because the Court further agrees with the Magistrate Judge that reasonable jurists would not disagree with these conclusions,

the Court **DENIES** Ruggles a certificate of appealability and **CERTIFIES** that any appeal of this Opinion and Order would be objectively frivolous. Finally, the Court **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this case on its docket.

    **SO ORDERED.**

March 11, 2026
 **DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**